## HOFFMAN v. OVERBEY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF VIRGINIA.

No. 99. Argued December 2, 1890. — Decided December 22, 1890.

A suit in equity to set aside a written compromise between a creditor and a debtor, whereby the former, in consideration of the surrender by the latter of certain real property of much less value than his debt, and of his representation that he was unable to pay such debt in full, discharged the debtor absolutely. The ground of relief was the false and fraudulent representations of the debtor as to his financial condition, and the admissions of the debtor to the creditor, made more than twelve years after the compromise. These admissions constituted the principal evidence of the fraud charged. *Held*, that the relief asked could not be granted, because such admissions were made after the debtor's intellect had become so far impaired, that his statements ought not to be the basis of a decree affecting his rights of property, and because it did not satisfactorily appear from other evidence that he had made false or fraudulent representations to the creditor.

THE case was stated by the court as follows:

Hoffman, Lee & Co., merchants of Baltimore, agreed to aid James R. Millner in his business of manufacturing tobacco in Pittsylvania County, Virginia, by advancing to him, when called upon, between the 10th days of March and May, 1871, the sum of fifteen thousand dollars, to be repaid with interest at the rate of six per cent per annum ; Millner agreeing that all the tobacco that he worked or caused to be worked during the year 1871 should be shipped to Hoffman, Lee & Co., for sale by them at not less than its market value. To secure the payment of that sum with interest, Millner, February 13, 1871, mortgaged to Hoffman, for his firm, a tract of land in Pittsylvania County containing two hundred acres, with its buildings, improvements and appurtenances, including the tobacco factory situated on it, with the fixtures and appliances thereto belonging.

By deed of May 3, 1872, Millner continued this mortgage in force as security for an additional loan of fifteen thousand

dollars, which Hoffman, Lee & Co. agreed to make between that date and June 1, 1872 — if he needed that amount, or should call for it, or any part thereof — upon the same terms as those expressed in the first mortgage.

On the 28th day of February, 1873, Millner and Hoffman, Lee & Co. entered into an agreement in writing, which, after reciting the above mortgages, proceeded: "Whereas upon a settlement of accounts between the parties respecting the advances secured by said deeds, the said James R. Millner is found indebted to said Hoffman, Lee & Co. in the sum of $15,758.67, which sum it is agreed far exceeds the value of all the property, real and personal, embraced in said mortgage deeds; and whereas the said James R. Millner is unable to pay the said debt in full and has offered, by way of compromise, to said Hoffman, Lee & Co., that he and his wife will, by a proper deed, surrender and release to said Hoffman, Lee & Co., or to said Robert G. Hoffman for their benefit, all the right, title and interest whatsoever in law and equity, including the wife's contingent right of dower, of them, the said James R. Millner and wife, and to all the property of every kind embraced and described in said deeds of mortgage, except as hereinafter stated, provided the said Hoffman, Lee & Co. will accept the said surrender and release, when perfected by a proper deed, in full satisfaction and discharge of his said debt to them, and will allow him to remain in the occupation of the land described in said mortgage deeds as the tenant of said Hoffman, Lee & Co. until the 1st day of January, 1874, without paying any rent for the same, it being understood that since the date of the last-mentioned deed a portion of the tobacco fixtures of the tobacco factory described in said deed of mortgage has been sold by said James R. Millner to Millner Bros. with written consent of said Hoffman, Lee & Co., and the portion so sold is not included in the present compromise, which includes, however, all the residue of the mortgaged property, except that portion of the tobacco fixtures so sold; and whereas the said Hoffman, Lee & Co. have accepted the said offer of compromise: Now, therefore, the parties do agree that the said James R. Millner and his wife

shall, without unreasonable delay, proceed to execute and acknowledge a proper deed relinquishing, surrendering and releasing to said Robert G. Hoffman, for the benefit of said Hoffman, Lee & Co., all their right, title and interest whatsoever in law or equity in and to all the mortgaged property aforesaid, except the portion of the fixtures sold as aforesaid; and upon the delivery of said deed executed and acknowledged as aforesaid, ready to be recorded, said Hoffman, Lee & Co. shall and will accept the same in full satisfaction and discharge of the said debt due to them by said James R. Millner and will allow him to occupy the land, including the factory and all the buildings upon it, as their tenant, during the remainder of the present year, without paying any rent."

Millner Brothers, a firm composed of John P. Millner and Joseph T. Millner, (brothers of James R. Millner,) under date of March 5, 1873, entered into a written contract with the appellants, whereby the latter in consideration of the delivery to them, by Millner Brothers, of 16,000 pounds of twist tobacco, branded " Jas. R. Millner's Extra Goldwin Twist," promised to make title to the former for the property which by the agreement of 28th of February, 1873, was to be conveyed by James R. Millner and wife to Hoffman, Lee & Co.

On the 15th day of March, 1873, James R. Millner and wife, in execution of the agreement of February 28, 1873, made an absolute conveyance to Hoffman, for his firm, of the property covered by the mortgage of February 13, 1871, excepting therefrom certain fixtures previously sold to Millner Brothers with the consent of Hoffman, Lee & Co. This deed contained the recital that the parties agreed that the amount due from James R. Millner to the appellants, $15,758.67, " far exceeds the value of all the said mortgaged property," but that the latter had consented to accept that property, free of all claims at law or in equity of James R. Millner and wife, or either of them, in full satisfaction and discharge of their debt.

The contract of March 5, 1873, having been satisfactorily performed, Hoffman, Lee & Co., by deed of June 10, 1874, conveyed to Millner Brothers the property embraced by the deed from James R. Millner and wife. Subsequently, Septem-

ber 3, 1874, Millner Brothers sold and conveyed it to James R. Millner, the consideration recited in the deed being six thousand dollars paid or secured to be paid.

On the 30th of June, 1885, more than twelve years after the settlement between James R. Millner and Hoffman, Lee & Co., the latter brought the present suit against James R. Millner, John P. Millner and J. D. Blair, administrator of Joseph T. Millner. The suit proceeds upon these grounds, substantially: That in order to induce the plaintiffs to make the settlement of February 28, 1873, James R. Millner represented to them not only that he had faithfully invested and used in the purchase and manufacture of leaf tobacco all the moneys advanced by the plaintiffs, and was totally unable to discharge his debts to them, and would surrender "all the property he owned," with a clear title thereto instead of a mere security therein, but that the property held by plaintiffs as security was worth $6000 to $8000, and "was all he had on earth," and that unless they took it and released him, he would avail himself of the bankrupt law; that, relying upon such representations, the plaintiffs "consummated the parol agreement to accept the mortgaged property from James R. Millner and release him," and to that end took the deed of March 15, 1873; that the representations so made were false; that the mortgaged property was not worth the sum named by him; that the whole transaction, resulting in the release of James R. Millner, and the sale to Millner Brothers, was pursuant to a plan formed between the three brothers to defraud the plaintiffs; that in violation of the arrangement under which the plaintiffs advanced moneys to James R. Millner, the latter "systematically set apart and appropriated to himself certain sums from such advances," without the knowledge of the plaintiffs, "until, at the time of said settlement and release, he had thus accumulated the large amount of $12,000, which money he had thus without warrant deducted from the advances and failed to invest and use as agreed;" that at the time of such settlement and release the plaintiffs were not advised that Millner "had so much money," certainly "they never suspected that he had $12,000 of their

money, in his hands in ready cash, which had been advanced only to be used in the purchase and manufacture of tobacco for them;" that these facts were fraudulently concealed by Millner to enable him to secure his release; that Millner Brothers knew of his having the $12,000, or, at least, knew that he had a large sum rightfully belonging to the plaintiffs; that they, also, knew of the above settlement and release, and aided James R. Millner therein, taking the conveyance to themselves of the mortgaged property to further said fraud, knowing that the property was to be paid for with tobacco manufactured by using plaintiffs' money; that the money so withheld and concealed was used as common capital between James R. Millner and Millner Brothers, the latter sharing in the general division of the profits arising therefrom; and that the tobacco delivered by them for the property was, in fact, purchased and prepared for sale with the money of the plaintiffs.

The bill also alleges that the plaintiffs, until very recently before the commencement of this suit, rested absolutely upon the finality and good faith of these transactions and settlements, and would have continued to do so, but for the revelation of the above facts made in June, 1885, by James R. Millner himself.

The relief sought is a decree declaring void the above releases and conveyances, and causing the property to be conveyed to the plaintiffs; that an accounting be had between them and the defendants; and that after all recourse against James R. Millner is exhausted, Millner Brothers and the administrator of Joseph T. Millner be required to reimburse them to the extent of any deficiency that may be found to exist.

During the progress of the cause an answer was filed by the committee of James R. Millner, who was adjudged a lunatic on the 24th of October, 1885, and committed to an insane asylum. He died pending this appeal, and his administrator was made a party instead of his committee. His heirs at law have also been made parties. Answers were filed by John P. Millner and the administrator of Joseph T. Millner, putting in issue the material allegations of the bill.

By the final decree the bill was dismissed, the circuit judge being of opinion that its allegations were not sustained by the proof.

*Mr. S. Teakle Wallis* and *Mr. James P. Harrison* (with whom was *Mr. Landon C. Berkeley, Jr.*, on the brief), for appellants.

*Mr. Samuel Field Phillips* and *Mr. Frederic D. McKenney*, for appellees.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The principal question raised by the pleadings and discussed at the bar involves actual fraud upon the part of James R. Millner in procuring the release from Hoffman, Lee & Co. We have seen that, according to the bill, Millner sought such release upon the ground of his "total inability" to discharge that claim, and because the mortgaged property, which he proposed to surrender absolutely, and freed from his wife's contingent right of dower, was all that he owned and "all he had on earth;" whereas, it is alleged, he had at the time $12,000 in cash that had been fraudulently kept out of the moneys advanced to him from time to time for the purchase and manufacture of tobacco to be shipped to Hoffman, Lee & Co. for sale, the proceeds to be applied to the payment of the moneys so advanced. That Millner had $12,000 in cash during the summer after the settlement with Hoffman, Lee & Co., is clearly established by the evidence. But that he represented to them at the time of, or as an inducement for, the settlement of February 28, 1873, that the mortgaged property was all he had, or that he threatened to take the benefit of the bankrupt law unless discharged upon the terms stated in the writing of that date, or that he retained, without investing in his business, $12,000 out of the moneys advanced to him, only appears from the depositions of Hoffman and his attorney and a physician, each of whom details conversations had by them, separately, with James R. Millner, in June, 1885, at Buffalo Lithia

Springs, Virginia, where he was then staying for his. health. Upon a careful scrutiny of all the evidence, oral and written, bearing upon the condition of James R. Millner at the date of the above conversations, we are satisfied that he was of unsound mind. What he said in those conversations. cannot properly be made the basis of a decree against him. His mental faculties had then become too much impaired to admit of any decree against him, based upon his statements or admissions. Indeed, the evidence fairly requires the conclusion that he was not at any time during the six months immediately preceding that time competent to make any admission that ought to be the foundation of a decree affecting his rights of. property.

The only representation that he may be held, upon the present record, to have made in order to induce Hoffman, Lee & Co. to accept the mortgaged property and discharge him from further liability, is, that at the time of the compromise he was — in the words of the agreement of February 28, 1873 — "unable to pay the said debt ($15,758.67) in full." Was that representation false or fraudulent? That it was either, is not shown with sufficient clearness to justify the court in disregarding or setting aside a settlement made more than twelve years before this suit was instituted. Besides there is no proof that James R. Millner had, at the time the compromise was made, the means that he subsequently invested in the business conducted by Millner Brothers, nor does it satisfactorily appear when or from whom he got the moneys that were thus invested. If he were in such condition as to be able to testify or to furnish evidence upon this point, it may be that the fact of his having, in cash, as much as $12,000 shortly after the settlement of 1873, if not explained, would justify the conclusion that he had that amount at the time he asserted his inability to pay in full the debt of Hoffman, Lee & Co. No such rule ought, however, to be applied in the present case; for it may well be supposed that his committee could not, after the lapse of so many years, furnish the explanation that would properly be required of Millner if he were alive and of sound mind.

Beyond this, it is not at all clear from the evidence, that

Hoffman, Lee & Co. released Millner in the belief that, when surrendering the mortgaged property, he gave up or intended to give up, literally, everything that he had, retaining nothing for the support of himself or family pending his efforts to establish himself again in business. The representation that he was unable to pay the debt of the plaintiff in full was not equivalent to a representation that the mortgaged property was all he owned. Liberally construed, the former representation was not inconsistent with the retention of a part of his means for the support of his family or to meet the demands of other creditors.

The fact principally relied upon to show that he and his brothers combined to defraud the plaintiffs is, that the property surrendered to the latter, and by them sold and conveyed to Millner Brothers, was ultimately repurchased by him. But there was no concealment of the fact that Millner Brothers, before taking a conveyance from the plaintiffs, had arranged to sell the property to James R. Millner. Of that fact the plaintiffs were informed both by Millner Brothers and by James R. Millner as early as April, 1873. The deed to the latter was put upon record September 3, 1874; so that Hoffman, Lee & Co. knew, or could easily have known, at least ten years before this suit was brought, that James R. Millner had become again the owner of the property surrendered to them in 1873. If they understood him as representing, in February, 1873, that the mortgaged property was "all he had on earth," the question would naturally have arisen in their minds as to how he was able to buy that property back so soon after the compromise. But no inquiry upon that subject was instituted; at least the evidence does not show that when the facts were recent, or before James R. Millner's mind was permanently impaired, any was made by them. The utmost that can be fairly predicated of such of the evidence as may be properly considered as the basis of a decree in the cause, is, that there is ground to suspect that James R. Millner did not make a frank and full disclosure as to his financial condition at the time the compromise was effected with the plaintiffs. But a suspicion of the want of good faith is not

sufficient to justify a decree setting aside, upon the ground of fraud, a compromise made as far back as 1873; especially, when the party to be affected by such a decree has become incapable, from impairment of intellect, to present his side of the question. Upon the whole case we are of opinion that the ends of justice will be best subserved by not disturbing that compromise.

These views render it unnecessary to consider other questions argued by counsel, and require an affirmance of the decree.

*Affirmed.*