Preis and Preis *v.* Mulholland & Gotwals, Inc., Appellant.

Argued October 17, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Robert F. Bonner*, for appellant.—It was error to exclude the offer to prove that there was a material error in the preparation of the agreement: Huss v. Morris, 63 Pa. 367; North and West Branch Ry. Co. v. Swank, 105 Pa. 555; Blygh v. Samson, 137 Pa. 368; Gump's Appeal, 65 Pa. 476; Pomeroy's Equity Jurisprudence, 4th Ed. Sec. 858; Vol. 34, C. Y. C. page 910; Radnor B. & L. Assn. v. Scott, 277 Pa. 56; Miller v. Trust Co., 285 Pa. 472; Stafford v. Giles, 135 Pa. 411; Diffendorfer v. Knoche, 118 Md. 189.

*Raymond A. White, Jr.*, of *Sloan, White & Sloan*, for appellee.—The contract clearly expressed the agreement between the parties: Youngstown Electric Light Co. v. Butler Co. Poor District, 21 Pa. Superior Ct. 95; Susquehanna Mutual Fire Ins. Co. v. Swank, 102 Pa. 17; Shoemaker's Account, 277 Pa. 425; Bright v. Allan, 203 Pa. 394; Maranna v. Fritz, 286 Pa. 57.

OPINION BY CUNNINGHAM, J., March 1, 1929:

The action below was assumpsit and was tried by one of the judges of the municipal court of the County of Philadelphia sitting without a jury. The finding was in favor of the plaintiffs for the full amount of their claim; the defendants, claiming that they have a valid defense but were not permitted to prove it by

reason of the rulings of the trial judge upon certain offers of evidence made, and questions asked, in their behalf, have appealed.

Under a written agreement of sale dated September 28, 1925, plaintiffs purchased from defendants twenty-eight lots in the City of Philadelphia and the present controversy arose over the liability of defendants to reimburse them for certain sums which they were required to pay for the paving of streets upon which four of the lots abutted. The lots all front on the north side of Grange Avenue, an east and west street; fourteen of them comprise the block between the east side of Mascher Street and the west side of Howard intersecting north and south streets, and the other fourteen, the block between the east side of Howard and the west side of Hope, another intersecting north and south street; plaintiffs have built a house on each lot.

At the time of the sale, which was for a consideration of $40,000 and was closed by settlement on October 30, 1925, the streets upon which the lots abutted were graded and curbed but not paved. The dispute grew out of this provision in the agreement of sale: "This agreement includes all street improvements, namely sewer and sewer laterals, water pipe and water laterals to the curb; grading, curbing, asphalt paving, with brick gutters." When Grange Avenue was paved the defendants raised no question about their liability, under this provision, to pay for the paving of that street, but denied any liability to pay for the paving of Mascher, Howard and Hope Streets along the sides of the corner lots abutting upon these intersecting streets. Their contention was that the actual agreement between plaintiffs and themselves was that defendants were to pay only for the paving of Grange Avenue, but through a mistake of the scrivener, who in drawing the agreement was acting for both parties,

it was drawn to include payment for "all street improvements" instead of "street paving to be included for Grange Avenue only." Howard Street was the next street paved and on June 16, 1926, the owners of property abutting on both sides of that street from Grange Avenue to Nedro Avenue, the next east and west street, including plaintiffs and defendants, joined in a petition to the city for the paving thereof and a contract was awarded to the Union Paving Company. Upon receipt of the bill for the paving of that portion of Howard Street upon which two of the lots abutted, it was sent by plaintiffs to defendants, who refused to pay it, and the Union Paving Company brought suit against plaintiffs, in settlement of which they were required to pay $789.66.

The next street paved was Mascher, the cost of which was charged by the city to property located on the east side thereof and north of Grange Avenue; the amount which plaintiffs were required to pay the Barber Asphalt Company for the lot owned by them on the east side of Mascher Street was $630.41. The paving of Hope Street was contemplated at the time the suit was brought and completed before the trial and the amount plaintiffs were required to pay for the improvement of that street was $376.06. The finding of the trial judge was in favor of the plaintiffs for the aggregate of these payments, $1,796.13, with interest. Defendants' sole defense was thus pleaded in their affidavit: "It is averred that the parties hereto at the time of making the said agreement and before that time, had in contemplation only the street paving on Grange Avenue, the street upon which all of the said lots fronted. That the price for said lots was based solely upon street paving for Grange Avenue only, and not for any streets abutting on the gables or sides of the corner lots, and if defendant had intended to include all paving it would have added the cost of said

paving to the price of said lots. At the time of sign-
ing said agreement, defendant was under contract with
the paving company to pave Grange Avenue, but did
not have any contract or contemplate a contract for
any of the streets abutting the corner lots mentioned
in sale agreement, all of which plaintiffs were fully
informed. The street paving mentioned in said agree-
ment was intended by the parties to said agreement to
be specifically restricted to Grange Avenue only. The
agreement was drawn by Warren B. Light, a friend
of both parties thereto, and he was acting for both
parties in drawing it. The parties did not notice the
omission in said contract, and had it been noticed be-
fore or at the time of signing the agreement it would
not have been signed by the parties until corrected to
read 'Street paving to be included for Grange Avenue
only.' ''

Apparently counsel for appellants sought by these
averments to bring their case within the principles an-
nounced by SHARSWOOD, J., in Huss v. Morris, 63 Pa.
367, 372. In that case the scrivener of a deed testi-
fied that in its preparation, although instructed by the
grantor to describe the consideration as the sum of
one dollar and his natural love and affection ''for his
grandchildren,'' he, by accident or mistake, wrote the
word ''heirs'' in the deed instead of the word ''grand-
children.'' The court below admitted the evidence of
the scrivener but held that it was not sufficient to
submit to the jury. In reversing the Supreme Court
said: ''It is the well-settled law of this state that the
mistake of a scrivener in preparing a deed or other
writing, may be shown by parol evidence, and the in-
strument reformed accordingly. It is but an exercise
of the equity powers inherent in all our courts, from
the earliest days of the province. Many of the cases are
complicated with fraud either at the time of the exe-
cution of the writing or in subsequently setting it up

contrary to the agreement and understanding of the parties. The cases are too numerous to cite, but I will content myself with referring to a few in which the element of fraud had no place: [citing cases]. The English cases are all examined, with his usual ability, by Chancellor KENT in Gillespie v. Moon, 2 Johns. Ch. 585, and the rule fully established that equity relieves against a mistake as well as against fraud. . .,. ... . Free as the courts have been in admitting parol evidence to correct mistakes, that liberality has been more particularly exercised in reference to the statement of the consideration not only in correcting what is wrong but in inserting what has been omitted: [citing cases]."

The conclusion reached in that case was that the evidence tending to show a mistake in the statement, of the consideration should have been submitted to the jury. For some reason, not apparent from the record, the scrivener was not called as the first and most important witness for the defendants in this case. Arthur E. Mulholland, one of the defendants, was the first witness called and counsel for appellants made an offer, the material portions of which were: "I offer to prove that the negotiations leading up to this contract only contemplated paving of the front, which was Grange Avenue, . . . . . . that there was no contemplation of paving any of the side streets, and if it had been they would have added the price to the lots; . . . . . . that the contract was drawn by Mr. Light, as far as they know, who was a friend of both parties who came to Mr. Mulholland and Mr. Gotwals and said he had prospective purchasers for these lots, and they negotiated upon the basis only of street improvements on the front; that the words, 'All street improvements,' without specifying only to apply to Grange Avenue, were put in there by mistake and were not noticed at the time; that had it been noticed, or any ambiguity, or any question, the contract would

not have been signed in its present condition, or if it would that the price for the lots would have been made to cover the extra cost of this paving.''

A general objection to the offer was made and sustained by the trial judge. Among other questions put to this witness, to which the trial judge sustained plaintiffs' objections, were these: ''Did you have a meeting with either Otto Preis or William Preis subsequent to their purchasing this land with regard to having the paving done on any of the side streets? ...... Upon what basis was the price for these 28 lots fixed at the time of entering into the contract? ....... What street improvements were figured in making up the price for the lots? ...... At the time of signing this contract, Mr. Mulholland, did you examine it closely? ...... When did the first discussion as to your paying the street paving on the side streets come up?''

Counsel for appellants then said: ''Any other witness I call would be the same, so the defendants rest.''

We think these rulings were too strict, particularly in the light of the pleadings and considering that th trial judge was acting, when dealing with this phase of the case, as a chancellor exercising equity powers in a court of law. Counsel for appellants would have made a better record for purposes of review if he had called the scrivener and offered to prove by him the alleged mistake in the drafting of the agreement but he seems to have construed the rulings of the court to mean that no evidence would be admitted for the purpose of endeavoring to secure a reformation of the written contract. It is true that the offer which the trial judge excluded did not entirely measure up to the averments in the affidavit and that it contained matters not strictly admissible, but the objection was only a general one and no effort was made by counsel for the plaintiffs to specify either the grounds of the objection or the portions of the offer which were in-

competent for the purpose indicated. Considered as a whole it was substantially an offer to prove that both parties had agreed, in view of the price fixed for the lots, that the sellers should be liable only for the paving of Grange Avenue and that the phrase "all street improvements" had been written into the agreement as the result of a mistake by the scrivener. If, as alleged, this contract, by reason of an accidental omission, does not express the real agreement of the parties, it is well established that it may be reformed in equity and that such reformation may be made at a trial such as this—but only in accordance with the rules of evidence in equity proceedings.

"In this state equity can be administered in actions tried in the law courts, but the rules of evidence in an equity case, and in a case at law, should not be confounded": North and West Branch Railway Co. v. Swank, 105 Pa. 555, 562. The burden assumed by defendants in this case is not light: The written agreement is presumed to contain the whole contract and the parol evidence to vary its terms on the ground of mistake must, in quality, be clear, precise and indubitable and such as would move a chancellor to decree a reformation of the instrument, and, so far as quantity is concerned, defendants must sustain their contention by the testimony of at least two witnesses or one witness and corroborating circumstances equivalent to the testimony of another witness. In our opinion, the interests of justice will be best served in this case by affording the defendants an opportunity to introduce whatever parol testimony they have to support the averments in their affidavit of defense, to the end that the trial judge may then properly pass upon its quality and sufficiency. The first, second and third assignments relate to the matters we have considered in this opinion and are accordingly sustained.

The judgment is reversed with a venire.