# The Pennsylvania Railroad Company v. Mandell et al.

*J. Peter Williams*, for plaintiff.

*Ned Stein*, for defendants.

FLOOD, J., June 5, 1951.—The Pennsylvania Railroad Company has sued defendant Mandell in assumpsit for the sum of $2,600 (reduced at trial to $2,184) because of the appropriation by Mandell of a shipment of tomatoes allegedly delivered to him by the railroad company, under the erroneous belief on its part that Mandell was authorized by the consignee to take possession of them. Mandell brought the consignee, Wagner, upon the record as an additional defendant, claiming that Wagner was liable to the railroad company or liable over to Mandell because the shipment was delivered to Mandell pursuant to authority given to him by Wagner, and that all of its actions in the matter were as Wagner's agent or under Wagner's instructions. The case was tried without a jury.

1. The first question involved in this case is whether Wagner authorized Mandell to take delivery of this shipment and to store it and otherwise handle it for the benefit of Wagner. Mandell's agent, Lombardo, testified that Wagner called him and asked him to take delivery of the shipment which he proceeded to do. Wagner on the other hand testified that he called Lombardo and asked him to call one Rothstein to whom Wagner had earlier ordered the shipment diverted, and stop the diversion. Wagner testified that he said to Lombardo: "I may unload it in Philadelphia. . . . If I unload it in Philadelphia, do you have room in your warehouse to unload it?"; that Lombardo replied that he thought he had, and that Wagner never said anything further to Lombardo that would authorize Mandell to take delivery of the tomatoes and unload the car.

Werther, plaintiff's diversion clerk, said that after the delivery of the tomatoes to Mandell, Wagner called Werther and asked him to unload the car. Werther told him that Mandell had already taken delivery. Wagner then told Werther that he was satisfied and that he would give the railroad a written turnover order and would pay the freight charges.

The carload had been delivered to Mandell without the presentation of any bill of lading or other written authorization. Wagner never thereafter gave the railroad a turnover order. Wagner testified that after Werther told him that the car had been unloaded he called Lombardo and asked whether he could pay the price Wagner had agreed to sell the tomatoes for in Pittsburgh; that Lombardo said that he thought he could and that Wagner then told Werther that he and Lombardo were going to get together and that he would give Werther a turnover order if they could get together; that he did not do so because a few minutes later Mandell himself called him and told him that he

was not interested and that Lombardo was in error in saying that Mandell would give Wagner the same price he could get in Pittsburgh.

Under all of this testimony we find upon this issue in favor of defendant Mandell. It seems to us most unlikely that he would have taken the carload of tomatoes upon a mere inquiry from Wagner as to whether he had room to store them. It seems quite evident that Mandell must have been a reputable businessman because Wagner was dealing with him familiarly and informally and the railroad evidently had such good relations with him that they allowed him to take this carload without requiring a bill of lading or any other written authorization prior to delivery. Again we have the testimony of Werther who, as between defendant and additional defendant, is a disinterested witness, to the effect that Wagner ratified the delivery of the tomatoes to Mandell. I am more inclined to believe Werther's presumably disinterested statement about ratification than Wagner's somewhat involved explanation. Wagner had given orders for the reconsignment of the tomatoes a number of times on the day when he talked to Lombardo. It seems to me more likely that he is the one who is mistaken as to the conversation with Lombardo. Wagner argues that Werther is not really disinterested because he works for the railroad, and Mandell is now bankrupt, and therefore the railroad has a better chance of recovery against Wagner than Mandell. It is enough to say that it does not appear of record that Mandell is bankrupt. Besides, the railroad sued Mandell and not Wagner, and its counsel may well not have been aware at the time Werther testified that it had any chance of collecting at all from Wagner.

2. The railroad cannot, however, recover from Wagner because it compromised the claim. The tomatoes were processed in some fashion by Mandell and eventually sold for $592.50. This amount was re-

474

mitted to Wagner by Mandell. Wagner, arguing that he could have sold the carload in Pittsburgh for some $3,900, made a claim for misdelivery against the Pennsylvania Railroad Company for this amount, less $592.50 received. The parties negotiated for 11 months. The railroad then paid Wagner the sum of $2,600, and received in return a release of liability and an assignment of any claims which Wagner had against any other person on account of the shipment. The $2,600 settlement included not only the loss in market value claimed by Wagner, but also a claim for breakage and delay in the sum of $416. It is for this reason that plaintiff amended its claim against defendant to $2,184, the amount it says it paid because of the misdelivery of the shipment.

In view of our conclusion that Wagner authorized the delivery to Mandell, the Pennsylvania Railroad was under no obligation to pay Wagner for loss by reason of this delivery. Plaintiff now argues that if it does not recover from Mandell because of this authorization, it should recover from Wagner because the compromise payment of $2,184 to Wagner was made as a result of Wagner's misstatements to the railroad company that Mandell lacked authority to receive delivery.

If the compromise was induced by fraud, it may be set aside like any other fraudulent contract. See Hoge v. Hoge, 1 Watts 163, 216, 217 (1832) ; 11 Am. Jur., Compromise and Settlement, §29. But it is necessary that the fraud be clearly shown. Cf. Jones v. Lewis, 148 Pa. 234 (1892) ; Ferguson Packing Company v. Mihalic, 99 Pa. Superior Ct. 158 (1930) ; Preis et al. v. Mulholland & Gotwals, Inc., 96 Pa. Superior Ct. 104 (1929). The testimony indicates that Wagner was mistaken, but it does not clearly show that he was consciously lying. The railroad has the burden of proving that it was deliberately deceived into compromising with Wagner. See 11 Am. Jur., Compromise and Set-

tlement, §§7, 32. It has not done so. See Hoffman v. Overbey, 137 U. S. 465 (1890).

The railroad argues that it accepted Wagner's word on Mandell's lack of authority and compromised merely on the amount involved and should, therefore, not be held to have compromised the matter of liability. Again the railroad has failed to sustain its burden of proof. The testimony as to the negotiations did not show in our opinion that the compromise was merely of amount and not of liability.

It must finally be remembered that the railroad is trying to upset a compromise because of an assertedly false claim when at the time it made the compromise all of the facts upon which it now relies were in the possession of its agent, Werther, who received knowledge of these facts while acting within the scope of his authority.

The court finds for defendant and for additional defendant, and against plaintiff.