## VIOLA HINTON et al. v. MRS. TOY ROBINSON et al. —364 S. W. (2d) 97.

Middle Section at Nashville, July 27, 1962.
Certiorari Denied by Supreme Court February 7, 1963.

Robert F. Brinkley, Gallatin, for appellants.

Boyers & Boyers and R. C. Ray, Gallatin, for appellees.

HUMPHREYS, J. This is an appeal by defendants from a decree of the Chancery Court of Sumner County sustaining the original bill and setting aside and voiding a deed whereby Mrs. Mattie Potts conveyed defendants a remainder in a house and lot in Sumner County.

The facts necessary to be recited are as follow. On February 22, 1949, Mrs. Mattie Potts, a resident of Sumner County, was adjudged insane and committed to Central State Hospital. On March 19, 1949, R. C. Ray, an attorney at law, at the Gallatin Bar, was appointed and qualified as her guardian. On October 26, 1956, the judgement of insanity was set aside by the Court of Appeals for the Middle Division of Tennessee as void because it affirmatively appeared from the record in the lunacy proceeding that Mrs. Potts had not been served with process and that she was not represented by guardian ad litem in the proceedings.

On September 1, 1956, prior to the entry of the order vacating the judgment of insanity, Mrs. Potts executed a deed prepared by R. C. Ray and acknowledged by him, whereby she conveyed a remainder interest in her home in Gallatin to the defendants, Mrs. Toy Robinson, Mrs. Celia Trout, and Mrs. Pauline Sutton.

On September 20, 1956, Mrs. Potts executed a will which had been prepared for her by Mr. Ray, by which she devised the same house and lot covered by the deed to complainants, and the balance of her estate to the three defendants.

Mrs. Potts' will, which was duly probated upon her death, has not been assailed. However, since complainants would take nothing under the will if the deed is valid, they have brought this suit. By their bill as originally filed, they sought to recover a judgment against defendants for $3,475.00 upon the theory this amount was owed to them for personal services rendered to Mrs. Potts during her lifetime, and sought to have the deed set aside as a fraud on their rights as creditors of Mrs. Potts'

estate. The bill was filed in the nature of a general creditors bill. At the hearing this bill was amended by decree so as to attack the deed as void on the ground there was a judgment of insanity against Mrs. Potts at the time of its execution, and the further ground that she was in fact mentally incompetent to execute the deed.

After hearing the case on oral testimony the Chancellor sustained the bill insofar as it sought to have the deed set aside on the grounds of Mrs. Potts' mental incompetence, but dismissed it insofar as it sought a judgment against defendants and insofar as it attacked the deed as a fraud on complainants' rights as creditors.

Defendants have appealed and assigned errors which challenged the Chancellor's decree.

It developed at the hearing of the cause that after Mrs. Potts' commitment to Central State Hospital, she remained there for approximately one year. That Mrs. Hinton, with whom she had resided prior to her commitment, was instrumental in securing her release, after which she contracted with the guardian to take care of Mrs. Potts. It also appears Mrs. Hinton and her husband fulfilled their contract in this regard, but that they were fully paid in accordance with its provisions. That in the latter part of 1956, Mr. Ray resigned as guardian, and after making a full accounting as such, in December of 1956, Mr. W. T. Goodall, also an attorney at law of the Gallatin Bar, was appointed as conservator for the estate of Mrs. Potts, who was quite feeble and unable to attend to her business affairs.

It appears further from the proof that Mrs. Potts came to be quite dependent upon Mrs. Hinton and for fear that Mrs. Hinton might leave her and not continue to

look after her, she discussed from time to time leaving her homeplace to Mrs. Hinton and told witnesses of this intention. However, in Mrs. Hinton's absence Mrs. Potts told others she thought Mrs. Hinton was being well paid for her services; that she was not obligated to do anything further for her, and that she preferred to leave the homeplace to the defendants, her nieces.

In disposing of the case the Chancellor held as a matter of law that a person who has a regular guardian cannot execute a deed to real estate and that Mrs. Potts' deed was void on this account. He was also of opinion the deed was void because Ray, the guardian, took the acknowledgment of Mrs. Potts to the deed as a notary public.

In addition to these legal reasons for invalidating the deed the Chancellor was of opinion from the testimony of the guardian Ray, and from the whole record, that Mrs. Potts did not know the effect of her deed.

■■ Dealing first with the legal question whether the fact that Mrs. Potts had a guardian at the time she executed the deed made it void, we are of opinion that this is not the case. While it is the rule that contracts of insane persons, after regular judgments of insanity are void, the inquisition of insanity being regarded as notice actual or constructive to all the world of the fact of insanity (Pritchett v. Thomas Plater & Co., 144 Tenn. 406, 432, 232 S. W. 961), it is also the law that judgments or decrees which have been declared to be void bind nobody, bar nobody, are nullities, and justify no act done thereunder. Holmes v. Eason, 8 Lea, 754, 760; Finley v. Gaught, 8 Baxt. 148, 151.

Corpus Juris Secundum states the law thus:

"A judgment which is void, as distinguished from one which is merely voidable, or liable to be vacated or set aside for irregularity or other cause, or reversed for error, is a mere nullity and has no force or effect. It is not binding on anyone; it raises no lien or estoppel; and does not impair or affect the rights of anyone. It confers no rights on the party in whose favor it is given, and affords no protection to persons acting under; * * *. Such a judgment may be attacked at any time by anyone, including the party in whose favor it is given, and may be impeached in any action, direct or collateral. It is not necessary to take any steps to vacate or avoid a void judgment; it may simply be ignored." 49 C.J.S. Judgments sec. 449, pp. 878, 879.

■ So, while the fact of a judgment of lunacy being pronounced against Mrs. Potts and appointment of a guardian of her estate justify and require that her contracts be scrutinized with care, where this judgment is void it cannot have the effect of invalidating Mrs. Potts' contracts as a matter of law. This is necessarily so, since as a matter of law there is no judgment or decree requiring this result.

In our opinion, the question in such a case as this is the same as it would be if there had been no judgment at all: Did Mrs. Potts know and intend to make a deed?

■ We are also of opinion the fact the judgment against Mrs. Potts was void, made the appointment of Mr. Ray as guardian thereunder void and, this being the case, the acknowledgment taken by Mr. Ray to the deed as a notary public was not invalid on account of said appointment, if the law on this were to be as the Chancellor held.

8

In the same authority just quoted from it is said that if a judgment is inseparable, it is wholly void. 59 C.J.S. Judgments sec. 450, p. 881.

In this case the appointment of Ray as guardian under the void judgment is inseparable from the void judgment and entirely dependant thereon, so that the appointment was and is void and of no legal effect.

██ However, we know of no rule that would invalidate a contract of a ward as a matter of law simply because acknowledged before the ward's guardian, assuming capacity in the ward to make the contract. We are of opinion that any transaction of this character should be tested as to validity by the general rule, that a notary cannot certify to, or act in a matter in which he has a personal interest. In 66 C.J.S. Notaries sec. 6, wherein this general rule is discussed, it is said, "The nature of an interest which will enable him (notary) to act cannot be stated in any general rule, but must be determined in each case from the peculiar facts and circumstances of that case. An important consideration is whether he would take a direct benefit from his act. The courts will not search for indirect and remote benefits to work disqualification, especially where the rights of third persons intervene."

Since from our investigation of the record we find that Mr. Ray had no personal interest in the execution of the deed, either direct or indirect, and that the rights of third persons have intervened, the acknowledgment to the deed cannot be invalidated because Mr. Ray took it.

██ Finally, it is the rule, and there are many cases annotated under sec. 64-504 T.C.A. which hold, that deeds are good as between the parties, without registration,

since registration is only necessary to protect the grantee against the grantor's creditors and purchasers from him without actual notice of the deed.

Under this rule, while Mrs. Potts' deed could not be registered if the acknowledgment were void, sec. 64-504 T.C.A., it would still be valid insofar as the complainants might be concerned, since they are not creditors and have actual notice.

Being of opinion the deed was not void as a matter of law, we come next to consider whether it was void as a matter of fact.

While it is the rule that a deed executed at a time when the grantor is mentally unbalanced, has no intelligent comprehension of the act being performed, and is incapable of transacting business is void (Cason v. Cason, 116 Tenn. 173, 93 S. W. 89), and that a deed to be valid must be the conscious, voluntary act of the grantor (Gass v. Mason, 36 Tenn. 497), it is likewise the rule in Tennessee that the fact that a bargainor is old— of infirm mind—likely to yield to importunity—or to become the victim of impositions, will not of itself invalidate a conveyance made by such grantor, unless it be shown also that such improper influences were actually exerted to obtain the conveyance. Walton v. Northington, 37 Tenn. 282.

There is no question but at the time of the execution of the deed Mrs. Potts was old, and infirm in health. However, the record is bare of any evidence that she was infirm of mind. To the contrary, the record is replete with evidence that, while subject to occasional convulsions, following which she would be mentally and

physically incapacitated for a short period of time, she was of sound mind.

With respect to the time when the deed in question was executed, there is no testimony that she was incapacitated either by health or by the state of her mind. To the contrary, the only evidence on this is that of Mr. Ray to the contrary effect.

In our opinion Mr. Ray's testimony sustains the proposition that Mrs. Potts knew she was executing a deed at the time she executed it.

The only fact in the record which could reflect on the validity of the testimony is that Mrs. Potts stated from time to time that she did not remember executing it. However, this in and of itself, accepting it as true, could not have the effect of invalidating the deed if it was her free act and deed, knowingly and voluntarily made, which under the record appears to have been the case.

There is, however, a more compelling reason than any we have given why this deed cannot now be set aside. And that is, even if we were to assume that Mrs. Potts thought she was executing a will at the time she made the deed, and at the time she was mentally incompetent to make the deed, it is plain and clear from uncontradicted testimony that she ratified and confirmed her deed with full knowledge of its provisions and its legal effect, and of her right to bring suit to set it aside, at a time when she was of sound mind.

This appears uncontradicted in the record from the testimony of disinterested witnesses.

In March of 1957, approximately six months after the execution and delivery of the deed, Mrs. Potts was carried

to the office of Stokely W. Dismukes, County Judge of Sumner County, to discuss it. Judge Dismukes testified as follows:

"Q. Alright. I hand you here a deed which purports to be signed by her, and I will ask you to look at that piece of paper?

"A. Yes, sir, I remember that. I remember reading that.

"Q. Did I present that to Mr. Goodall?

"A. Yes.

"Q. Did he take it and read it and explain it to Mrs. Potts?

"A. Right.

"Q. Did she say that was her signature?.

"A. She said she didn't remember signing it, but it was her signature.

"Q. After it was read to and explained there in our presence what did she say?

"A. She said that was exactly what she wanted or words to that effect. She wanted it that way.

"Q. Alright—

"THE COURT: Let me see that.

"MR. RAY: This is the original deed.

"Q. At that time, Judge, even though she was brought here in an ambulance did you think she talked with good sense?

"A. Her mind was clear as far as I could tell.

"Q. She knew what was going on?

"A. Yes." Tr. 173.

Judge Dismukes is corroborated by General Sessions Judge William Fred Durham, who was present at the meeting, and by Mr. Thomas Boyers, an attorney, both of whom were present at this meeting, and testify to the same effect.

 Since it is the law in Tennessee that a voidable contract can be confirmed or ratified (Carnes & Perry v. Polk, 44 Tenn. 87) and it appears from the uncontradicted testimony that Mrs. Potts did confirm and ratify her deed with full knowledge of its consequences, and after she had been advised that she might attack it and set it aside if she wished to, it is our opinion the deed cannot now be invalidated on account of any incapacitating condition which might have existed prior to this solemn ratification and confirmation.

Accordingly, the assignments of error are sustained and an order will be entered dismissing complainants' suit and taxing them with the costs of the cause.

Shriver and Chattin, JJ., concurring.