Floyd F. **BARRETT**, Plaintiff–Appellant,

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.**

No. 86–5932.

United States Court of Appeals,
Sixth Circuit.

Argued June 16, 1987.

Decided July 9, 1987.

Rehearing and Rehearing En Banc
Denied Aug. 19, 1987.

D.C. Daniel, Jr., Murfreesboro, Tenn., for plaintiff-appellant.

Joe B. Brown, U.S. Atty., Nashville, Tenn., William T. Warren, III, for defendant-appellee.

Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

PER CURIAM.

Plaintiff Floyd F. Barrett appeals the district court's judgment dismissing his "independent action" seeking relief from a prior judgment of the district court affirming the Secretary's denial of plaintiff's application for disability insurance benefits under Title II of the Social Security Act. For the reasons that follow, we affirm.

I.

As the district court observed, this case "has a protracted and exhaustive procedural history." Plaintiff filed his original claim for benefits on June 27, 1975, alleg-

ing disability as of June 27, 1974, due to a "nervous condition rupture." The initial administrative determination was that plaintiff did not meet the insured status requirements of the Act on or after his alleged onset date of June 27, 1974. Plaintiff did not seek reconsideration of that decision.

Plaintiff filed his second application for benefits on August 4, 1976, alleging disability as of January 2, 1949, due to "nerves-bad hearing." The application was denied initially and upon reconsideration, following which, upon plaintiff's request, a de novo hearing was held before an Administrative Law Judge ("ALJ").

In his subsequent decision denying plaintiff's application, the ALJ observed that plaintiff was currently 56 years of age and had obtained a sixth-grade education. The ALJ noted that the record established a long history of emotional problems, dating back to April 1949, when plaintiff was hospitalized and underwent thirteen electro-shock treatments and fifty-four treatments of sub-shock insulin without benefit or change in original symptomology. The ALJ stated that there was no showing of any significant improvement in plaintiff's condition until June 14, 1973, "when he was seen at the clinic and appeared to be doing better." The ALJ further observed that the record established that plaintiff returned to work in September 1973 as an employee of the Swiss Maid Restaurant until July 1974. In 1973, plaintiff earned $1,913.45 and in 1974, $3,098.80. The ALJ noted that "[i]n connection with this work activity, the claimant stated that he had not worked under 'special privileges' condition since about 1970."

In analyzing plaintiff's claim, the ALJ first found that plaintiff met the disability insured status requirements through June 30, 1955, but not thereafter. Accordingly, in order to be entitled to a period of disability benefits, it was necessary for plaintiff to establish that he was under a disability commencing on or prior to June 30, 1955, and that such disability continued to within fourteen months of his applications of June 27, 1975, and August 4, 1976. *See* 42 U.S.

C. § 416(i)(2)(E). The ALJ determined that plaintiff was not under such a "continuing disability" due to his work activities at Swiss Maid Restaurant from September 1973 to July 1974. *See* former 20 C.F.R. §§ 404.1532(a), 404.1534(b).[1]

Following affirmation of the ALJ's decision by the Appeals Council, plaintiff sought review in federal district court. On March 12, 1979, the district court held in favor of plaintiff and remanded the action to the Secretary for further proceedings. On April 30, 1979, the Appeals Council vacated the prior decision of the ALJ and remanded the case to the ALJ for further proceedings consistent with the district court's order.

On remand, another evidentiary hearing was held. Plaintiff testified that he had difficulty making change at Swiss Maid and that he did not remember signing the previous statement that his work at Swiss Maid was not under special privileges. Plaintiff's sister testified that she was appointed as plaintiff's legal guardian on February 28, 1972, and that plaintiff was a forgetful person. Plaintiff's daughter testified that plaintiff was under very relaxed supervision at Swiss Maid and that she frequently accompanied him on deliveries. Affidavits by plaintiff's daughter, niece and sister were submitted, which generally asserted that plaintiff had difficulty making change and finding his destinations while performing his delivery job for Swiss Maid.

On October 22, 1979, the ALJ rendered a recommended decision that benefits be denied. The ALJ concluded that the record did not support a finding that plaintiff was given special consideration as an employee of Swiss Maid. The ALJ noted that there was no evidence that plaintiff's employer, who had no special relationship to him, shared the view of plaintiff's family members that plaintiff was not performing adequately his duties as a deliveryman. The restaurant's failure to fire plaintiff or change his duties was accepted by the ALJ as persuasive evidence that plaintiff's performance was, in fact, considered adequate. The ALJ therefore concluded that plaintiff performed substantial gainful activity within the meaning of the Act from September 1973 to July 1974 and recommended that plaintiff's application for disability benefits be denied.

Following the Appeals Council's adoption of the findings and conclusions set forth in the ALJ's decision, plaintiff again sought review in district court. This time, the district court affirmed the Secretary's decision. On appeal, a panel of this court agreed with the district court's determination that the findings of the Secretary were supported by substantial evidence and accordingly affirmed the judgment of the district court.

Plaintiff then filed a third application for disability benefits on July 22, 1983, alleging that he became disabled in 1950 due to a "mental condition." The claim was denied initially and upon reconsideration, prompting plaintiff to request a de novo hearing before an ALJ. On July 6, 1984, plaintiff's request for a hearing was dismissed on the basis of res judicata. The Appeals Council affirmed this decision on November 8, 1984.

Plaintiff then brought another action for review in federal district court. On July 24, 1985, the district court issued a memorandum and order granting the Secretary's motion to dismiss on the basis of res judicata. On August 2, 1985, plaintiff filed a motion to alter or amend judgment, as well as a motion for leave to amend his com-

---

1. 20 C.F.R. § 404.1532(a) (1976) provided:
   *In general.* If an individual performed work during any period in which he alleges that he was under a disability ..., the work performed may demonstrate that such individual has ability to engage in substantial gainful activity. If the work performed establishes that an individual ... is able to engage in substantial gainful activity, he is not under a disability....

   20 C.F.R. § 404.1534(b) (1976) provided:
   An individual's earnings from work activities averaging in excess of $200 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity....

plaint. On August 8, 1985, the district court granted plaintiff's motion to alter or amend the judgment and set the case for oral argument.

On December 17, 1985, with the United States Attorney's consent, an evidentiary hearing was held. Two witnesses testified. Eva Jean Smith, a cashier at Swiss Maid at the time of plaintiff's employment, testified that plaintiff was slow, nervous, and easily confused, and that when plaintiff made deliveries his daughter often accompanied him and that he encountered difficulty in counting money. Veteran's Administration psychiatrist Dr. Adolph Seigmann testified regarding plaintiff's past and present mental condition and his previous incompetency rating by the Veterans Administration. Dr. Seigmann testified that plaintiff suffered severe schizophrenia and psychotic episodes as well as paranoia and that in 1974–75 plaintiff was an out-patient at the VA hospital and received 5 mg. of Valium three times daily and Thorazine. Dr. Seigmann further testified that plaintiff's guardianship was lifted on December 31, 1982, but that plaintiff's competency was purely a legal, not a medical, classification. Accordingly, Dr. Seigmann felt that plaintiff's adjudication of competency in 1982 had no relation to his clinical situation, which remained the same. Finally, Dr. Seigmann testified that although he was not associated with the VA hospital in 1973 and 1974, if he had known at that time that plaintiff was working, it would not have upset him because he would have felt such work to be beneficial.

On June 30, 1986, the district court rendered its memorandum opinion dismissing plaintiff's independent action. The district court determined that Smith's testimony was not sufficient to rebut the Secretary's finding that plaintiff's work activity from September 1973 through June 1974 constituted substantial gainful activity. The district court stated that plaintiff did not fall within the "exception" set forth in former section 404.1534 that "a mentally handicapped individual who performs simple tasks subject to close and continuous supervision would not have demonstrated ability to engage in substantial gainful activity solely on the basis of the rate of his remuneration for such activity." 20 C.F.R. § 404.1534(a) (1976). "The court finds as have the ALJs before it and the Sixth Circuit thereafter, that the plaintiff's work activity does not fall within this exception because the limited supervision the plaintiff received cannot be classified as 'close and continuous.'"

The district court did not dispute the credibility or the accuracy of Dr. Seigmann's findings. "However, the diagnosis of plaintiff's mental illness does not alter the conclusion that he engaged in substantial gainful employment for a period of almost a year." Accordingly, the district court concluded that the new evidence presented in the independent action did not compel an award of relief or a remand for further proceedings. The present appeal followed.

## II.

Before addressing plaintiff's arguments, it will be helpful to identify which judgment of the district court plaintiff sought to alter or amend. A review of plaintiff's amended complaint reveals that plaintiff sought to set aside or reopen the July 23, 1980, decision of the district court which affirmed the Secretary's decision denying plaintiff's application on its merits and which was affirmed by this court on January 4, 1982.[2]

■ At this point it will also be beneficial to clarify the nature of plaintiff's action. Plaintiff continually asserts that this is an independent action "pursuant to Rule 60(b)." This is not entirely accurate. Rule 60(b) merely provides, in relevant part: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, ... or to set aside a judgment for fraud upon the court." According to Wright and Miller, "[t]he reference to 'independent action' in

---

**2.** Plaintiff has not argued in the present appeal that the district court erred in finding that the

Secretary properly denied his third application on the basis of res judicata.

the saving clause is to what had been historically known simply as an independent action in equity to obtain relief from a judgment." 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2868, at 237–38 (1973). The "indispensable elements" of the independent action are:

(1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Id.* at 238 (quoting *National Surety Co. v. State Bank,* 120 F. 593, 599 (8th Cir.1903)). Relief pursuant to the independent action is available only in cases "of unusual and exceptional circumstances." *Rader v. Cliburn,* 476 F.2d 182, 184 (6th Cir.1973) (per curiam). Because this is an equitable action, our standard of review is abuse of discretion.

Plaintiff's first argument is based on the fact that plaintiff was under court-appointed guardianship and adjudication of incompetency from October 30, 1961, until December 31, 1982, at which time he was restored to competency by the Chancery Court for Rutherford County, Tennessee. Plaintiff asserts that the order of appointment as well as the order of restoration delimit plaintiff's period of legal incompetency and are entitled to full faith and credit under 28 U.S.C. § 1738. Plaintiff further contends that Tennessee courts have held that a contract by an incompetent is void. *See Hinton v. Robinson,* 51 Tenn.App. 1, 364 S.W.2d 97, 99 (1962). *See also Stockmeyer v. Tobin,* 139 U.S. 176, 186, 11 S.Ct. 504, 508, 35 L.Ed. 123 (1891) (after an individual is adjudged incompetent and a guardian appointed, "no other evidence than the interdiction itself is necessary to prove the incapacity of the person, and to invalidate any contract he may have made after the day the petition for interdiction was presented."). Plaintiff reasons that because his contract of employment with Swiss Maid was void, "then the plaintiff did not work and his earnings were not properly countable."

■ However, whether or not plaintiff had a valid employment contract with Swiss Maid under state law is simply irrelevant to the issue of whether he is entitled to social security benefits. The premise of 20 C.F.R. § 404.1532(a), quoted *supra* note 1, is that the *performance* of work demonstrates that an individual has the ability to engage in substantial gainful activity. Plaintiff's inability to enter into a legal employment contract, a proposition we are willing to accept *arguendo,* in no way detracts from the Secretary's factual determination that in 1973 and 1974 petitioner engaged in substantial gainful activity, which finding the district court and this court found to be supported by substantial evidence. Plaintiff's performance of work remains a fact even if Swiss Maid could not legally have required plaintiff to do so.

Plaintiff next argues that the provisions of 28 U.S.C. § 2401(a)[3] "clearly give the claimant the right to sue on his own behalf within three (3) years after his incompetency was removed." Plaintiff contends he was within the terms of the statute by virtue of his legal incompetency and therefore is "within the class of persons meant to be protected by the provisions of the statute."

We are at somewhat of a loss to understand plaintiff's argument. Section 2401 "is the general statute of limitations for actions against the United States." 14 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3654, at 198 n. 15 (1985). In the present case, the district court did not dismiss plaintiff's action as untimely. Accordingly, section 2401(a) has

---

3. Title 28 U.S.C. § 2401(a) provides:
    Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

no apparent relevance to the present appeal.

Nonetheless, plaintiff argues that by virtue of his incompetency prior to 1982, he was unable to effectively assist his counsel in presenting his claim. Plaintiff argues that he is now able to provide his counsel with more complete and accurate evidence to support his disability claim. Therefore, plaintiff reasons, he should now be permitted to reopen his case pursuant to section 2401(a).

We find this argument equally puzzling because the district court did in fact conduct an evidentiary hearing, allowing plaintiff to present the evidence he alleges he was unable to present in the prior proceedings due to his incompetency. The district court considered this evidence and concluded that a remand was not necessary. The district court found Eva Smith's testimony insufficient to rebut the finding of the ALJ that plaintiff's work activity in 1973–74 constituted substantial gainful activity. Given that Smith's testimony was cumulative of the evidence already contained in the record, the district court could reach no other conclusion.

The district court accepted Dr. Seigmann's testimony that plaintiff had suffered from severe schizophrenia and psychotic episodes as well as paranoia, but properly concluded that the diagnosis of plaintiff's mental illness did not alter the conclusion that he engaged in substantial gainful employment for a period of almost a year. We are of the view that the district court's findings in this regard were proper and that, accordingly, the district court did not abuse its discretion in dismissing plaintiff's claim.[4]

Plaintiff next argues that in enacting 42 U.S.C. § 405(a), which delegates to the Secretary the authority for making rules and regulations pertaining to proof of disability, Congress did not intend to give the Secretary a free reign to disregard state incompetency proceedings designed to protect the mentally handicapped. Plaintiff argues the Secretary's "regulations in this regard"[5] are inconsistent with the purposes of the Act and should be held inapplicable or unconstitutional because "in the context of mentally incompetent individuals the courts of the United States are required to take cognizance of the appointments of guardians and removal of the capacity to contract." Plaintiff submits that Congress did not intend in passing the Social Security Act to repeal the state laws of incompetency, the full faith and credit statute, and the saving provisions of 28 U.S.C. § 2401(a). Plaintiff asserts that the proper resolution of this case is to (1) treat his prior incompetency as a fact; (2) require the Secretary to accept that fact; and (3) therefore conclude that anyone who is under a valid court decision of incompetency "would not be found to be legally capable of engaging in an employment contract[;] therefore the presumption from earnings does not apply."

At the outset, we note that there is no indication in the record that plaintiff raised before the district court his current claim that the Secretary's regulations are invalid. "In the interests of judicial economy and the finality of judgments, and mindful of our role as an appellate court, we have declined to review arguments not presented to the district court in the first instance." *Sigmon Fuel Co. v. Tennessee Valley Authority*, 754 F.2d 162, 164 (6th Cir.1985).

▪ In any event, plaintiff's argument has no substantive merit. Petitioner is basically repeating his argument that an individual under a valid court decision of incompetency cannot be found to be legally capable of entering into an employment contract. However, it was not necessary for the Secretary to reject the state court's adjudication of incompetency in order to deny plaintiff benefits pursuant to the regulations, because as earlier explained, that adjudication was simply not relevant to the Secretary's determination that plaintiff did

---

**4.** Plaintiff's argument that the district court failed to follow the proper law governing "independent actions" is without merit.

**5.** Plaintiff never identifies exactly which regulations violate due process.

in fact engage in substantial gainful activity.

Plaintiff next argues the district court's decision denied him equal protection of the laws in light of Sixth Circuit precedent in *Parker v. Califano*, 644 F.2d 1199 (6th Cir.1981); *Richardson v. Heckler*, 750 F.2d 506 (6th Cir.1984); and *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir.1984). At the outset, it should be noted that plaintiff's argument in this connection is not properly characterized as a denial of equal protection. Rather, plaintiff's argument is simply that he is entitled to relief as a matter of law because the facts of his case are analogous to the above-cited Sixth Circuit opinions.

In *Parker*, the plaintiff had filed four applications for social security disability benefits. Her first application was denied at the administrative level for failure to meet both the earnings requirement and the disability requirement. Although the denial letter explained that the plaintiff could request reconsideration within six months, no such request was filed. The plaintiff thereafter filed three additional applications for disability benefits, each of which was denied on the basis of res judicata.

The plaintiff then filed an action in federal district court arguing that the Secretary's failure to ascertain whether the plaintiff's failure to pursue her administrative remedies might have been due to a psychiatric disability and the Secretary's subsequent application of the doctrine of res judicata resulted in a denial of the plaintiff's rights to due process. The district court, relying on *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), concluded that it was without subject matter jurisdiction to consider the plaintiff's claim.

On appeal, this court concluded that "[s]ince the advent of *Sanders*, the courts have held that, absent a colorable constitutional claim, federal courts are without jurisdiction to review the Secretary's denial of benefits on the basis of *res judicata.*" 644 F.2d at 1201. The panel noted, however, that due process requires that a claimant receive meaningful notice and an opportunity to be heard before her claim for disability benefits may be denied. The panel concluded that the plaintiff had presented "a colorable argument that she failed to understand and act upon the notice she received because of her mental condition, and that a denial of benefits based upon this failure is a denial of due process." *Id.* at 1203. Accordingly, the panel concluded that the plaintiff's claim fell within the "colorable constitutional claim" exception in *Sanders* and that the district court accordingly erred when it held that it lacked jurisdiction.

*Parker* is clearly distinguishable from the present case. Plaintiff argues that he comes within the scope of *Parker* because he was suffering from schizophrenia at the time he failed to pursue his first claim beyond the Secretary's initial administrative determination. However, as plaintiff admits, he did ultimately pursue his second claim through all administrative and judicial review stages. Thus, plaintiff's claim has nothing to do with the legal proposition set forth in *Parker* "that it is a denial of due process for a claimant to be precluded from litigating her claim for benefits because of a failure to proceed in a timely fashion from one administrative stage to the next when the claimant did not receive meaningful notice and the opportunity to be heard." 644 F.2d at 1203.

Plaintiff next relies on *Richardson v. Heckler*, 750 F.2d 506 (6th Cir.1984). In *Richardson*, the plaintiff filed an application for disability benefits alleging an onset of disability in 1951. The ALJ determined that the evidence of the plaintiff's "mental condition on the date on which he last met the special earnings requirement was too speculative to support a finding of disability." *Id.* at 507.

On appeal, the panel stated that the problem in the case arose because of a ten-year gap in medical evidence. However, the panel noted that "it is not open to dispute that the medical evidence available in 1953 supported a finding that [the plaintiff's] mental condition was disabling." *Id.* at 510. The panel concluded that "[t]his evidence triggered the presumption of con-

tinuing disability and placed the burden on the Secretary to produce evidence that [the plaintiff's] condition has improved." *Id.* Because there was no evidence in the record of an improvement in the plaintiff's condition, the panel remanded the case with orders that benefits be awarded. *Richardson* has no application to the present case because even if it were determined that plaintiff was entitled to a presumption of continuing disability, the presumption would be rebutted by the fact that plaintiff performed substantial gainful activity in 1973–74.

Plaintiff next relies on *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir.1984). In *Schweiker*, the issue on appeal was whether the record contained substantial evidence to support the ALJ's finding that the plaintiff's alleged psychiatric impairment did not significantly affect his ability to perform work-related functions on or before March 31, 1968, the last date the plaintiff met the insured status requirements. The panel concluded that, considering the evidence as a whole, the Secretary's finding that the plaintiff did not suffer from a disabling psychiatric condition on or before March 31, 1968, was not adequately supported. The panel noted that in contrast to the "ample evidence" to support the plaintiff's claim of a long-standing mental impairment, disabling by March 31, 1968, at the latest, there was only one piece of evidence that even arguably directly contradicted the claim. The panel held that the Secretary's decision improperly focused on that one piece of evidence and ignored the "voluminous evidence" in support of the plaintiff's claim. *Id.* at 249.

*Schweiker* is also clearly distinguishable from the present case. This is not a situation where the Secretary has relied on a single piece of evidence to the exclusion of "voluminous evidence" demonstrating that plaintiff was disabled.

Plaintiff's final argument is that the ALJ erred in using statements against him which were made while plaintiff was incompetent. *See Hoffman v. Overbey*, 137 U.S. 465, 471, 11 S.Ct. 157, 159, 34 L.Ed. 754 (1890) (statements made by an individual while under a mental incapacity may not be used "to admit of any decree against him."). Plaintiff is apparently referring to the reference by the ALJ in the September 23, 1977, decision to plaintiff's statement "that he had not worked under 'special privileges' conditions since about 1970."

However, on April 30, 1979, the Appeals Council vacated the ALJ's September 23, 1977, denial decision and remanded the case to the ALJ for further proceedings consistent with the district court's order. On remand, another evidentiary hearing was held, following which the ALJ rendered a second decision, again denying benefits, on October 22, 1979. In that decision, the ALJ at no point even mentioned, much less relied on, plaintiff's prior statement that he had not worked under "special privileges" since about 1970. Accordingly, plaintiff's statement has not been used as a basis for the denial of benefits.

### III.

As noted, one of the "indispensable elements" of plaintiff's cause of action is that the prior judgment ought not, in equity and good conscience, to be enforced. In our view, the district court did not abuse its discretion in determining that the new evidence and arguments set forth in plaintiff's independent action do not entitle plaintiff to equitable relief. Plaintiff has for the most part attempted to use the "independent action" to relitigate issues finally determined in the prior action, which is not the function of the present "independent action." *See* 11 C. Wright & A. Miller, *supra*, § 2868, at 239. Because plaintiff has not shown that " 'equitable considerations' require that the effect of the judgment [denying plaintiff's application for social security benefits] be compromised," *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 79 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970), we AFFIRM.