**STATE of Tennessee, Appellee,**

v.

**Phillip WORKMAN, Appellant.**

Supreme Court of Tennessee,
at Jackson.

Jan. 30, 1984.
Rehearing Denied March 19, 1984.

Edward G. Thompson, Robert W. Jones, W. Mark Ward, Asst. Public Defenders, A.C. Wharton, Jr., Shelby County Public Defender, Memphis, for appellant.

Gordon W. Smith, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

The defendant, Phillip Workman, has appealed his conviction for murder in the first degree in the perpetration of a robbery, and the sentence of death. He questions the sufficiency of the convicting evidence and the evidence supporting the aggravating circumstances found by the jury, the rulings by the trial court on the efficacy of the indictment, on voir dire, on the admission of evidence, on objections to argument of the state in the sentencing phase of the trial, and the court's instructions to the jury. Defendant also insists that the Tennessee Death Penalty Act is unconstitutional, both in its content and how it was applied in the present case.

After consideration of the several issues and of the entire record, we are of the opinion that no reversible error was committed in the trial, that the verdict and sentence are sustained by the evidence, and that the sentence of death under the circumstances of this case is in no way arbitrary or disproportionate. *See State v. Harries*, 657 S.W.2d 414 (Tenn.1983); *State v. Laney*, 654 S.W.2d 383 (Tenn.1983); *Houston v. State*, 593 S.W.2d 267 (Tenn. 1980), *cert. denied*, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117.

There is little controversy concerning the material facts. The murder for which defendant stands convicted occurred shortly after 10:00 p.m. on August 5, 1981. Defendant entered Wendy's restaurant on Thomas Street in Memphis, Tennessee, just before closing time. He purchased food at the counter and dawdled over it until the restaurant closed. The defendant then, at gunpoint, herded the employees and a customer of the restaurant into the manager's office, where he told the manager to put the day's receipts (around $1,170.00) into a bag. Defendant took an employee's car keys, ordered everyone to remain in the office, locked the door and left. During the robbery, the defendant informed the employees that he had an accomplice, not as "cool" as he was, who would shoot if any employee disregarded defendant's orders.

Unknown to the defendant, an employee had tripped the restaurant's silent alarm. Lt. Ronald Oliver of the Memphis Police Department met the defendant, just as the defendant was leaving the restaurant. Just what occurred at that time is not clear in the record. There is testimony, however, that Lt. Oliver and the defendant left the restaurant together. Thereafter, the defendant broke away from Lt. Oliver and ran. When defendant did not stop at Lt. Oliver's command, Lt. Oliver and Officer Aubrey Stoddard grabbed the defendant. The defendant broke free of the officers, shot Lt. Oliver in the chest and Officer Stoddard in the arm, fired a second shot at Stoddard, and fled toward the auto parts store next to Wendy's. The defendant paused in his flight long enough to fire one bullet at a third police officer, who had

arrived at the crime scene. Lt. Oliver died as the result of the chest wound.

Police officers sealed off the area behind Wendy's and the auto parts store. After an extensive search of the area by police using attack dogs, defendant was found hiding in the underbrush. His .45 calibre pistol was found nearby.

Defendant was taken from the crime scene to the hospital in a squad car for treatment of cuts and scratches on his face and body, dog bites, and wounds to his buttocks. On the way and after being advised of his *Miranda* rights, defendant told the officers he had robbed Wendy's because he needed money to leave town. He gave the officers a false name and address, later explaining that he wanted to avoid embarrassment to his family.

Defendant was treated in the hospital emergency room and released to the police. Very shortly thereafter, defendant was viewed in a "lineup" by the employees of Wendy's, who had been locked in the manager's office in the course of the robbery. Each of the employees identified defendant as the robber. At the trial, though defendant's appearance was different, the employees identified defendant as the robber.

The defendant testified at the trial and admitted both the robbery and the killing, but tried to show he was a drug addict and under the influence of drugs at the time of the crimes. He insisted he was trying to give up when he was "hit or grabbed" by the officers, and that it was after that that he shot Stoddard and Oliver. He also testified that he could only remember "bits" and "pieces" of the events of the evening.

▮ On the introduction of evidence that defendant was holding his head as he fled the murder scene and that a flashlight was found on the Wendy's parking lot, the defense filed a motion that the state produce any evidence it had that the defendant had been hit in the head with a flashlight by the victim. The evidence was to be used by the defendant either to show self-defense or to mitigate the killing by proving defendant was stunned when he pulled the trigger. The trial court denied the motion, correctly pointing out that the evidence was irrelevant to defendant's guilt or innocence under *Smith v. State*, 209 Tenn. 499, 354 S.W.2d 450 (1961) (Self-defense no defense to felony murder), and while it would bear on mitigating circumstances, the issue was moot in light of the admission by the state that it had no such evidence.

▮ Defendant also sought to have excluded a collective exhibit of photographs of the crime scene on the ground that the witness was unable to match the photographs of a spent cartridge case with the cartridge case which had been filed as an exhibit. The trial court admitted the photographs after the "witness" testified it was a fair, accurate, and exact photo of what he saw in the parking lot north of Wendy's. We see no error in the trial court's ruling. The Witness's inability to link the photograph to a real exhibit would go to its weight, not its admissibility. *See Hughes v. State*, 126 Tenn. 40, 148 S.W. 543, 549 (1912).

▮ The jury found from the evidence that the defendant was guilty of murder in the first degree in the perpetration of a robbery. In a separate proceeding, the jury imposed the sentence of death on defendant.

In this state a jury may impose the death penalty on a defendant only upon its finding that one or more aggravating circumstances listed in the statute are present, and that such circumstance or circumstances are not outweighed by mitigating circumstances. *See* T.C.A. § 39–2–203(i). Such a finding was made by the jury in this case. In addition to finding that defendant was guilty of murder in the first degree in the perpetration of a robbery, a statutory aggravating circumstance,[1] the jury found defendant (a) "knowingly created a great risk of death to two (2) or more persons, other than the victim murdered, during his

---

1. T.C.A. § 39–2–203(i)(7).

act of murder;"[2] (b) the murder was committed "for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another;"[3] (c) the murder was committed by the defendant "while he was in lawful custody or in a place of lawful confinement or during his escape from lawful custody or from a place of lawful confinement;"[4] and (d) the murder was committed against a peace officer, who was engaged in the performance of his duties, and the defendant knew or reasonably should have known that such victim was a peace officer engaged in the performance of his duties.[5]

■ In an issue which has a bearing on the overriding issue of sufficiency of the convicting evidence, the defendant insists that the statement given by defendant to the police officers and considered by the jury was inadmissible. Defendant argues that at the time he gave the statement, he was in no condition to waive his *Miranda* rights as he was in pain and had been struck on the head. We find no merit in this issue. The evidence indicates that defendant suffered no material injury in his escape and capture. Further, on this point the hospital records indicate that defendant was alert and oriented. The information in the records was buttressed by the testimony of the officers to whom the statement was made, and also by defendant's efforts to establish a false identity for himself in an effort to protect his family from any "fall out" from his actions on the night of August 5, 1981. With the evidence in this state, we can not say it preponderates against the trial court's ruling that defendant, after having been advised of his *Miranda* rights, knowingly and freely gave the statement to the police officers and that it was admissible in evidence.

■ The defendant also insists that the lineup identification was suggestive and that, as a consequence, it and the subsequent in-court identification of the defendant as the perpetrator should have been suppressed. The basis of the defendant's contention is that the defendant was the only person in the lineup with bruises and cuts on his face. The photograph of the lineup shows that the participants were sufficiently similar in appearance to preclude any aura of suggestiveness, otherwise.

The record shows that at the time the witnesses saw the defendant originally, he had no marks on his face, and they had no reason to expect that the person to be identified in the lineup would have such marks. Furthermore, there is evidence that the bruises and cuts on the defendant's face made the identification of the defendant more difficult. The record also shows that Wendy's employees had the opportunity to view the defendant inside the lighted restaurant for a relatively long period of time. As a result, they supplied law enforcement officers with an accurate and detailed description of the defendant. The lineup was held only a few hours after the crime, when events were fresh in the minds of the witnesses, and each of them was positive in identifying the defendant as the perpetrator. These are all positive factors that have a bearing on the reliability of the identification of the defendant as the perpetrator and support the trial court's finding that the identification of the defendant by the witnesses that viewed the lineup and testified in the trial was sufficiently reliable to withstand a due process attack despite any suggestiveness that might have resulted from the lineup procedure. *See Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ In our opinion, defendant's guilt of murder in the first degree in the perpetration of a robbery was proved beyond a reasonable doubt. As to the findings of the jury in the sentencing hearing, the defendant questions only the finding that defendant committed the murder "during his

---

**2.** T.C.A. § 39–2–203(i)(3).

**3.** T.C.A. § 39–2–203(i)(6).

**4.** T.C.A. § 39–2–203(i)(8).

**5.** T.C.A. § 39–2–203(i)(9).

escape from lawful custody." The defendant argues that he was never in lawful custody and could not therefore be guilty of this aggravated circumstance. On this point, the evidence shows that Lt. Oliver and the defendant came out of Wendy's together, and that the defendant did not make a break for freedom until outside the building. After that, Stoddard and Oliver had the defendant in their grasp immediately before the defendant shot and killed Lt. Oliver. Evidently, the jury found that Lt. Oliver had arrested the defendant inside of Wendy's and had him in custody when defendant made his first break for freedom. We think this is sufficient to justify the jury finding that defendant committed the murder "during his escape from lawful custody." But, even if it were not, the validity of the death sentence would not be affected in view of the overwhelming evidence of defendant's guilt and the numerous other aggravating circumstances found by the jury, which are admittedly supported by the requisite evidence, and the paucity of evidence of mitigating circumstances.

■ Defendant insists that the indictment against him should have been dismissed because of sex discrimination against women in the selection of grand jury forepersons in Shelby County. It has been held on several occasions that "in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial under-representation of his race or of the identifiable group to which he belongs." *Rose v. Mitchell,* 443 U.S. 545, 565, 99 S.Ct. 2993, 3004, 61 L.Ed.2d 739 (1979); *Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). *See Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972). Since the defendant is not a member of the class allegedly discriminated against (women), he lacks standing to challenge that discrimination. *State v. Coe,* 655 S.W.2d 902, 909–10. *See also, Beal v. Rose,* 532 F.Supp. 306, 309–11, (M.D.Tenn.1981) (vacated 703 F.2d 558);

*United States v. Musto,* 540 F.Supp. 346, 353 (D.N.J.1982).

■ The defendant also raises a number of issues with relation to the *voir dire.* Defendant insists that it was an abuse of discretion for the trial court to deny individual *voir dire.* He argues that in capital cases individual *voir dire* is the preferred method and also that group *voir dire* on the *Witherspoon* issue makes a jury prone to give the death penalty as found in *Hovey v. Superior Court of Alameda County,* 28 Cal.3d 1, 168 Cal.Rptr. 128, 616 P.2d 1301 (1980). Defendant makes no showing of prejudice from group *voir dire* in this particular case. *See State v. Simon,* 635 S.W.2d 498, 506 (Tenn.1982).. Further, the case was tried by an experienced trial judge who, in ruling on the method of selecting jurors, informed counsel that if any problem developed in the selection of jurors, he would permit individual *voir dire.* On this point, the record shows that the trial judge gave counsel for defendant great latitude in questioning of jurors, permitting counsel not only to ask questions of a jury panel generally, but to ask the same question of an individual juror when counsel so desired. In our opinion, no prejudice could or did result from the denial of individual *voir dire.*

■ The defendant sought to secure the attendance of Dr. Craig Haney of California, whose testimony was the basis for the *Hovey* decision, and to have the state pay the travel expenses of the witness. Defendant relied on the "Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings." T.C.A. § 40–17–201, *et seq.* Such a decision is discretionary with the trial court, *State v. Smith,* 1 Or.App. 153, 458 P.2d 687, 690 (1969), and the defendant must show that the witness is material. *State v. Mance,* 7 Ariz.App. 269, 438 P.2d 338 (1968). We see no abuse of discretion in denying the certificate where, as in this case, the witness is to testify only on the issue of whether jury *voir dire* should be conducted individually or collectively.

Defendant questions also the granting of the state's challenge, on *voir dire*, of juror Brenda Grimes for cause. Defendant insists that Miss Grimes was a qualified juror under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

Under *Witherspoon*, "no juror can be excluded for cause from a capital case because of the juror's opposition to the death penalty, unless the juror unambiguously admits that he would automatically vote against the imposition of the death penalty, no matter what the circumstances of the case were." *State v. Harrington*, 627 S.W.2d 345, (Tenn.1982), *cert. denied*, 457 U.S. 1110, 102 S.Ct. 2913, 73 L.Ed.2d 1320 (1982). If a juror is challenged for cause on a basis at variance with *Witherspoon*, a death sentence imposed by the jury cannot stand. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976). This is so even if the record is void of evidence of a systematic and intentional exclusion of a qualified group of jurors, and other jurors opposed in principle to the death penalty were permitted to serve. *State v. Harrington, supra*. The determining factor in deciding whether or not the exclusion of prospective jurors based upon opposition to the death penalty is in accord with *Witherspoon* seems to be the precise nature of the language used in the *voir dire* questioning and the juror's replies. In the case under consideration, the trial judge initially refused to excuse juror Grimes for cause because of the ambiguity of her answers to questions regarding her opposition to the death penalty. Finally, however, she stated she would "automatically refuse to consider the imposition of capital punishment in this case regardless of the law and evidence in this case" and was excused. We agree with the trial judge that the answer given by juror Grimes disqualified her as a juror under *Witherspoon*, and that her exclusion from the jury panel, for cause, was proper.

Defendant insists that the trial judge erred in allowing the state to ask prospective jurors the following question:

If the State proves beyond a reasonable doubt and to a moral certainty that the defendant, Phillip Workman, is guilty of murder in the perpetration of a robbery or of murder in the first degree and you as a juror further find that the State has proven the existence beyond a reasonable doubt and to a moral certainty of one or more of the aggravating circumstances set out in the statute, and you also find that there are no mitigating circumstances or none that *substantially offset* the aggravating circumstances proven, *would* you vote to impose the death penalty?

The defendant argues that it was improper to use the term "substantially offset," rather than "substantially outweigh" set forth in T.C.A. § 39–2–203(g), and the term "would."

In our opinion the question, in context, was not designed to elicit a promise from the jurors to inflict the penalty of death on a finding of guilt of murder in the first degree, as insisted by defendant. Additionally, as regards any *Witherspoon* criteria, no prospective juror was excused on the basis of his or her answer to this question alone. The use of the phrase "sufficiently offset" while not verbatim repetition from the statute would seem harmless error, if any, since the trial court instructed the jury with the proper standard.

The defendant contends that the trial court erred in denying his request that he be furnished with statements of the state's witnesses, pursuant to Rule 16(a)(1)(E), Tennessee Rules of Criminal Procedure, outside the presence of the jury. Appellant insists that the delivery of the statement in the courtroom tends to rehabilitate the witness unless the defense is able to point out an inconsistency between the statement and the in-court testimony of the witness—that a defendant is faced with a *Hobson's* choice in which he either foregoes discovery rights or risks an improper inference by the jury. Needless to say, if a *Hobson's* choice exists, it is equally a problem of the state since it has the same right to the delivery of a wit-

ness's statement under the rule as does the defendant. There is nothing in the rule which requires that the statements of witnesses be delivered to either party outside the presence of the jury. Furthermore, there is no indication that prejudice could result to either party from the delivery of the statements in the courtroom in the course of the trial.

■ The record also shows that the trial court denied the defendant's request that the state secure and deliver to the defendant the arrest histories, if any, of the state's witnesses. We see no error in the trial court's action, since the state has no duty, either under the Tennessee Rules of Criminal Procedure or by decisional law in this state, to provide such information to the defendant. *See State v. Baker*, 623 S.W.2d 132, 133 (Tenn.Cr.App.1981).

■ There are several issues directed to the sentencing phase of the trial. The defendant takes issue with a question asked of Officer Stoddard by the state, the state's closing argument to the jury, and the refusal of the trial court to give requested special instructions. The defendant also charges that the jury considered "improper matters" in the course of its deliberations.

The record shows that Officer Stoddard was permitted to answer, over objection, the following question:

Q. Who, if anyone, if you know, knowingly created a great risk of death to two or more persons other than Lt. Ronald Oliver, who was killed that day?

One of the aggravating circumstances relied on by the state was that at the time of the killing of Lt. Oliver, the defendant knowingly created a great risk of death to two or more persons other than the victim.

Defendant argues that the question asked Officer Stoddard was designed to elicit improper opinion evidence in that it called for a conclusion as to an ultimate issue that the trier of fact was as competent to determine as was the witness. *See City of Columbia v. C.F.W. Construction Company*, 557 S.W.2d 734 (Tenn.1977):

Paine, Tennessee Law of Evidence, Sec. 168, at 177 (1974). We agree with the defendant that the question was improper; but the error was harmless. The uncontradicted evidence in the guilt phase of the trial showed that at the time defendant killed Lt. Oliver, he wounded Officer Stoddard and shot at Officer Parker. Stoddard's opinion that the defendant "knowingly created a great risk of death to two or more persons other than Lt. Oliver" added nothing to this uncontradicted evidence.

■ The argument of the state questioned by the defendant was made in response to the defense argument that the defendant had no significant history of prior criminal activity. The defendant, during the guilt phase of the trial, admitted to a prior burglary conviction. Using this, the state countered the defense argument of no significant history of prior criminal activity by noting that although the defense had asked defendant about his burglary conviction, they had not asked him if he had been convicted of anything else and noted that, "They never asked him that. If we had some proof during the mitigation phase, that might have been an appropriate question for the State to have asked." (Defendant did have prior convictions for selling drugs and aggravated assault). As the case developed, we think the state's argument was a proper response to the issue raised by the defendant. *See, State v. Sutton*, 562 S.W.2d 820, 823–24 (Tenn. 1978).

■ The defendant filed seven special requests for instructions to be given the jury in the sentencing phase of the trial, which were denied by the trial court. We see no error in this action. The instructions given the jury were accurate and covered all issues material to the imposition of a sentence for murder in the first degree in the perpetration of a robbery.

■ Finally, the defendant insists that the jury considered irrelevant matters and that, as a consequence, a new trial should be granted. The record shows that at the

hearing on the motion for a new trial, the defendant presented evidence that the jury had discussed parole time for a life sentence, the possibility defendant would never be executed, and the consequences if the jury could not agree on a verdict. The state's witnesses (five jurors) admitted some talk of these matters (*e.g.,* "personal feelings," "how many years they would be on death row," parole in a hypothetical situation) but affirmed that they relied solely on the law in reaching the sentence. The trial judge found that the defendant was trying to impeach the verdict and disallowed an offer of proof that one juror was affected by the irrelevant talk, and denied defendant's motion for a new trial. We concur in his action. *See Montgomery v. State,* 556 S.W.2d 559, 561 (Tenn.Cr.App. 1977).

The defendant's conviction of first degree murder and sentence of death are affirmed. The death sentence will be carried out as provided by law on the 29th day of May, 1984, unless stayed by appropriate authority. Costs are adjudged against defendant.

I am authorized to state that Justice Brock concurs in the affirmance of conviction but dissents from the imposition of the death penalty for the reasons expressed in his dissent in *State v. Tennessee v. Dicks,* 615 S.W.2d 126, 132 (Tenn.1981).

FONES, C.J., and HARBISON and DROWOTA, JJ., concur.

BROCK, J., concurs in part and dissents in part.