**Robert A. BUELL, Petitioner–Appellant,**

v.

**Carl S. ANDERSON, Warden Respondent–Appellee.**

**No. 02–4033, 02–4055.**

United States Court of Appeals, Sixth Circuit.

Sept. 24, 2002.

Before BOGGS, SILER, and DAUGHTREY, Circuit Judges.

OPINION AND ORDER

BOGGS, Circuit Judge.

Petitioner Robert A. Buell appeals the district court's denial of his motion for relief from the district court's original denial of a petition of habeas corpus. He also seeks a stay of his execution scheduled for September 25. On April 11, 1984, an Ohio state trial court convicted Buell of the 1982 kidnaping, rape, and murder of an eleven-year old girl, Krista Harrison, and sentenced him to death. On July 22, 1999, the district court denied Robert A. Buell's petition for habeas corpus. On December 4, 2001, this court affirmed the district court's denial. *Buell v. Mitchell,* 274 F.3d 337 (6th Cir.2001), *cert. dismissed as untimely,* —— U.S. ——, 122 S.Ct. 1603, 152 L.Ed.2d 619 (2002). On September 10, 2002, more than nine months after our decision affirming the denial of his petition for habeas corpus and fifteen days before his scheduled execution. Buell filed an action in the district court for relief from that court's final judgment denying habeas. The action was denominated a motion under Fed. R. Civ. Pro. 60(b) or, in the alternative, an independent action claiming fraud upon the court, recognized in the savings clause of 60(b).

The stated basis of the motion under either theory was that the alleged bias of the state trial and post-conviction judge, Mark K. Wiest, constituted a fraud on the district court that decided the habeas petition. On September 17, the district court denied the motion, stating that the motion was "just a rehash of the same arguments presented unsuccessfully to many courts and many judges, except that they have been dressed in a brand new outfit called

judicial bias." On September 18, Buell filed a notice of appeal and a motion for a stay of execution pending a resolution of the appeal. On September 23, two days before the scheduled execution, Buell submitted papers to this court arguing for the first time that his successive habeas petition under review here was not subject to the AEDPA standards of review because his original habeas petition was filed on April 1, 1996, twenty-three days before the effective date of AEDPA.

In October 1981, nine months before Harrison was murdered, Tina Marie Harmon, another young Ohio girl, was kidnaped, raped, and murdered. Herman Ray Rucker and Ernest Holbrook, Jr., were arrested for the Harmon murder. Rucker was convicted by a jury and sentenced to twenty years to life. Holbrook, who had waived jury trial, was convicted by a three-judge panel and sentenced to twenty-nine years to life. The Harrison murder occurred while both men were in custody and because of its similarity to the Harmon murder and because carpet fiber evidence linked the two murders, it is now generally believed that it was committed by the same perpetrator. Both men moved for and were eventually granted retrials.

In June 1983, Rucker was acquitted in a jury retrial, presided over by Judge Wiest. Holbrook's retrial was assigned to the same three-judge panel that had originally convicted him. Judge Wiest was also involved in a ministerial capacity in the Holbrook retrial, forwarding motions filed with him to the three-judge panel and granting the ultimate dismissal of the case when the prosecution dropped the charges after Buell's conviction. During the men's retrials, it emerged that some prosecution testimony in their original trials had been perjured, while other prosecution testimony had been refreshed, or possibly created, by means of hypnosis.

Judge Wiest also presided over the jury trial of Buell for the Harrison murder. Buell was convicted and sentenced to death in April 1984, after Rucker's acquittal and before the charges against Holbrook were dropped. After denial of his direct appeals, Buell challenged his conviction collaterally in Ohio state courts, Judge Wiest again presiding. After exhausting state collateral attacks, Buell filed a federal habeas petition, the denial of which is the issue in this action.

I

Buell here raises three arguments that Judge Wiest committed fraud on the federal habeas court.

First, Buell argues that because Judge Wiest was involved with the Rucker and Holbrook retrials and these two men were acquitted, at least in part on the basis that another person committed both the Harrison and the Harmon murders, he was biased against Buell. This argument raises a number of issues not addressed by Buell in his briefs. Judge Wiest was not the factfinder in either the Rucker or the Holbrook retrials. Therefore their acquittals do not establish that Judge Wiest, who was not the factfinder in the Buell trial either, reached any factual conclusions regarding their guilt at all. In addition, acquitting Rucker or Holbrook merely required a finding that there was a reasonable doubt that somebody else committed the Harrison and Harmon murders, not a finding that there was no reasonable doubt that Buell committed these murders. Given the gulf between these two findings, it is not merely logically possible, but entirely plausible, for a factfinder to reach the former finding and not the latter. In addition, though Wiest's role in the Rucker and Holbrook tri-

als was a matter of public record, this issue was never raised on direct appeal, state post-conviction review, or federal habeas review.

Finally, Buell here alleges no specific instance of misconduct by Judge Wiest in the Buell trial motivated by a pre-formed conclusion of Buell's guilt. Judge Wiest, when confronted with these allegations, pointed out that in fact he made several orders highly favorable to Buell during the course of the trial, including moving the trial to a different county to seat an impartial jury and denying prosecution efforts to introduce evidence that Buell had previously been convicted of other kidnapings, sexual assaults and attempts thereto against both women and girls.[1]

Second, Buell argues that Judge Wiest covered up evidence that the prosecution had hypnotically refreshed the memory of witnesses at his trial. He alleges here that this was the case with two young witnesses who had observed the Harmon abduction, one of whom was mentally retarded, and a man who claimed to have seen Buell in the area where Harrison's body was found. At trial, Buell was unaware of the hypnosis of the witnesses. He became aware of it, at the latest, when the instances of witness hypnosis were first litigated during the state collateral attack. Buell here claims that Judge Wiest must have known of the prosecution practice of hypnotically refreshing witness memory, based on the Rucker and Holbrook retrials, but failed to disclose this to Buell at trial. The prosecution claims to have been unaware of the witness hypnosis at the time of trial. Judge Wiest, examining this question in post-conviction proceedings, found that the prosecution was indeed ignorant of the hypnosis, but negli-

gent in failing to inform itself. Buell contends that this finding by Judge Wiest only further confirms his bias and dishonesty. It should be noted that the same allegations of undisclosed witness hypnosis were also the factual predicate of several of Buell's claims in his original federal habeas petition, then under the headings of ineffective assistance of counsel in failing to discover the hypnosis and prosecution misconduct in failing to disclose the same. This court considered and rejected these claims. *Buell v. Mitchell,* 274 F.3d 337, 361–64 (6th Cir.2001). This court also doubted that all witnesses Buell claimed were hypnotized actually were and concluded "that the hypnosis of the witnesses did not affect the result of Buell's trial," because as there was sufficient other evidence to constitute overwhelming proof of Buell's guilt. *Id.* at 362.

Third, Buell argues that Judge Wiest covered up and participated in prosecution misconduct in failing to turn over exculpatory evidence at his trial. Buell filed a pre-trial motion to receive all evidence favorable to him in the hands of the prosecution. The prosecution issued a blanket denial that it possessed any such evidence. At that time, the prosecution had in its possession a statement by one David Dawson that, at around 11:30 A.M. on the day Harrison's body was found, he saw some clothes, later linked to Buell, on the ground near the site where the body was found. Dawson did not testify at trial. At trial, Buell's supervisor testified for the prosecution that Buell's time sheet showed a three-and-a-half-hour absence and that Buell had probably been gone in the afternoon, though he was not certain of that. The prosecution argued at trial that Buell had dumped the body and the clothes in

---

1. On September 19, the Ohio State Supreme Court ruled that Buell's motion in the Ohio courts to disqualify Wiest was untimely, in that it was based on information available to Buell at trial, eighteen years previously.

the afternoon of that day. The *Dawson* statement would have contradicted that theory. During state post-conviction proceedings, Judge Wiest and his staff reviewed the prosecutor's files *in camera* for exculpatory evidence, but did not turn over the *Dawson* statement to Buell. Buell only discovered the *Dawson* statement after the trial. Buell's original filings before us do not state when exactly he discovered this statement, or if it was available to him at the time he filed the federal habeas petition. However, Buell has stated in a newspaper interview that he has had the *Dawson* statement since 1992. Jon Craig, *Death–Row Inmate Breaks Silence,* Akron Beacon J., June 11, 2000, at A1. Buell's subsequent filings confirm this date.

## II

*Buell's motion considered under Rule 60(b)*

█ Buell's motion cannot be maintained as a Rule 60(b) motion under the Antiterrorism and Effective Death Penalty Act (AEDPA). A 60(b) motion to reconsider the denial of a petition for a writ of habeas corpus will be treated as a successive motion for a writ of habeas corpus. *See McQueen v. Scroggy,* 99 F.3d 1302, 1335 (6th Cir.1996) (holding, pre-AEDPA, in the context of 28 U.S.C. § 2254 that "a Rule 60(b) motion is the practical equivalent of a successive habeas corpus petition and therefore is subject to a cause and prejudice analysis"); *Homrich v. United States,* 205 F.3d 1340, 1999 WL 1206903, at *2 (6th Cir.1999) (unpublished) (holding,

post-AEDPA, in the context of 28 U.S.C. § 2255 that "[w]hen a petitioner raises new claims in a Rule 60(b) motion challenging the denial of a § 2255 motion, the Rule 60(b) motion must be construed as an attempt by the petitioner to file a second motion to vacate"). Almost all circuits have ruled on this issue and only one has taken the contrary position. *Rodriguez v. Mitchell,* 252 F.3d 191, 198–200 & n. 2 (2d Cir.2001) (holding that a motion to reconsider the denial of an original habeas corpus petition does not fall under AEDPA's strictures against successive habeas petitions and collecting the contrary circuit decisions).[2] "Before a second or successive application [for habeas corpus relief] is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). There is no indication or claim before this court that such an order was granted or even sought. Therefore the motion fails as a Rule 60(b) motion.

Buell concedes now, though not before the district court, that this court, as well as almost all other circuits, have applied AEDPA to Rule 60(b) motion in these circumstances. Buell Br. at 16. Here, relying on the outlier Second Circuit *Rodriguez* opinion and dicta in *Dunlap v. Litscher,* 301 F.3d 873 (7th Cir.2002) (Posner, J.), Buell argues that § 2244 should not always be applied to bar 60(b) motions.

Buell's (or rather, Posner's) general point is well taken. For example, Rule

**2.** At this time, the application of AEDPA to a Rule 60(b) motion is before the Supreme Court. *Abdur'Rahman v. Bell,* 226 F.3d 696 (6th Cir.2000), *cert. granted,* —— U.S. ——, 122 S.Ct. 1605, 152 L.Ed.2d 620 (2002). The Supreme Court has already held that the appellate equivalent of a 60(b) motion, a motion to recall the mandate, "on the basis of the merits of the underlying decision can be re-

garded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2)." *Calderon v. Thompson,* 523 U.S. 538, 553, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998).

60(b)(3) would generally allow relief from a denial of a petition for a writ of habeas corpus clearly produced by the state's misrepresentation in the habeas proceedings, such as an intentionally or inadvertently false affidavit that the petitioner had already been released. However, it is very difficult to fit such a factual situation within AEDPA's requirement of "facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). Therefore a mechanical application of AEDPA in this hypothetical might deprive the petitioner of any opportunity ever to make a federal habeas corpus claim. However, the correct response in such a case, should it ever arise, would be to decline, on constitutional or statutory grounds, to apply § 2244(b)(2)(B)(ii) mechanistically. The remaining requirements of AEDPA, including that the "factual predicate for the claim could not have been discovered previously through the exercise of due diligence," § 2244(b)(2)(B)(i), and the application to the court of appeals for permission to file, could easily be met in such cases.

Buell's argument here, however, fails on several grounds. First, Buell's claim here is in substance merely another iteration, with a new argument or two, of his attack on the state court proceedings. He raises no quarrel with the procedural course, rather than the substantive outcome, of his federal habeas proceedings. There is no apparent reason why he could not have made all of these arguments in the original federal habeas proceeding. While it is undeniably true that the alleged errors in the state court proceedings were relevant to the federal habeas proceedings, it is difficult to imagine any case in which this could not occur (or at least could not be plausibly alleged). Therefore, adopting Buell's reasoning would defeat AEDPA's one-bite-at-the-apple philosophy. This would mean the return of endless successive motions for habeas relief, this time in the guise of 60(b) motions to reopen the consideration of the denial of habeas relief, and iterations *ad infinitum.* Second, Buell has failed not only to meet the AEDPA requirement of clear and convincing evidence of innocence, which the meritorious petitioner in the hypothetical case would also have difficulty meeting, but also the requirement of an application for permission to file with this court, which he could have met, and, crucially, the requirement of impossibility of earlier discovery of the factual predicate with due diligence, which he could have met were his case like the hypothetical case.

Finally, we note that the one year time-limit for motions to reopen under 60(b)(3) ("fraud, ... misrepresentation, or other misconduct of an adverse party"), the category most closely matching Buell's motion here, expired more than two years ago. Buell responds that he is not filing under 60(b)(3), but under the non-time-limited, catch-all provision of 60(b)(6) ("any other reason justifying relief from the judgment"). This argument, while frequently made by parties barred under the 60(b)(1),(2), or (3) time-limits, would in effect eliminate the limit and is invariably denied by this court. *See, e.g., Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund,* 249 F.3d 519, 524 (6th Cir.2001) (holding Rule 60(b)(6) applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule."); *McCurry ex rel. Turner v. Adventist Health System/Sunbelt, Inc.,* 298 F.3d 586 (6th Cir.2002) (same); *Jalapeno Property Management, LLC v. Dukas,* 265

F.3d 506, 509–10 (6th Cir.2001) (same); *Jinks v. AlliedSignal, Inc.,* 250 F.3d 381, 386 (6th Cir.2001) (same).

■ We next consider Buell's most recent argument, that AEDPA was inapplicable to his successive habeas petition because the original habeas petition had been filed prior to the effective date of AEDPA. In making this argument, Buell relies on this court's holding in *In re Hanserd,* 123 F.3d 922 (6th Cir.1997). In *Hanserd,* this court held that a meritorious successive habeas petition based upon an intervening change in statutory construction, rather than constitutional law, and therefore barred by AEDPA, will be reviewed under the old abuse of the writ standard, rather than the new AEDPA standard, if the previous petition had been filed prior to AEDPA's effective date. *Id.* at 930. While there is language in *Hanserd* suggesting a broader reading, this court quickly clarified that *Hanserd* is not a general declaration of one post-AEDPA bite at the apple. In *In Re Sonshine,* decided only three months after *Hanserd,* this court made clear that if *Hanserd* applied at all outside the scope of a change in statutory construction, the additional extent is extremely limited. 132 F.3d 1133, 1134–35 (6th Cir.1997). Finally, in *Coe v. Bell,* we explicitly denied "that AEDPA has an impermissible retroactive effect whenever AEDPA's standard of review, applied to an application filed after AEDPA's effective date, results in a decision that would have been different under the pre-AEDPA standard of review." 209 F.3d 815, 823 (6th Cir.2000). As that is the argument *Buell* makes here, it is in direct contradiction to binding precedent and hence without merit.

Furthermore, Buell's attempt to claim that he should be able to file at this late date, a second or successive habeas petition, fails to persuade, whether measured under the standard of AEDPA, or under the pre-AEDPA standard of abuse of the writ.

His contention of "actual innocence" is based on a highly strained construction of factual matters that were resolved against him at trial or in post-conviction proceedings or, in the case of the Dawson statement, are matters that have been within his knowledge for a decade. If the Dawson statement could have been used by the defense with significant effect (which seems dubious in light of the nebulousness of the evidence it is purported to contradict), petitioner had ample opportunity to raise the contention in previous post-conviction proceedings. The very fact that Buell now complains, in passing, about an officer's having alluded to the statement at trial (Buell Motion for Permission to File a Successive Petition, at 22), indicates that the possible existence of such a statement was not a matter of unknown, yet decisive, import at trial.

We have carefully considered the various factual claims and innuendo contained in Buell's last-minute filings, and we hold that they do not suffice to permit the filing of a second or successive habeas petition, whether judged under pre- or post-AEDPA standards.

*Buell's motion considered as an independent action for relief*

■ Buell's alternative basis for relief is an "independent action claiming a fraud upon this court." Buell's district court motion, at 1. Rule 60(b) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, . . . or to set aside a judgment for fraud upon the court." Fed. R. Civ. Pro. 60(b). While Buell conflates these two separate sources of authority, independent action and fraud upon the court, Buell should prevail if he can meet the standards of either, rather

than having to meet both. *See 2300 Elm Hill Pike, Inc. v. Orlando Residence, Ltd.,* 168 F.3d 490, 1998 WL 808217, at *2 n. 1 (6th Cir.1998) (unpublished) ("Note that the issue of fraud on the court is a separate issue from an independent action in equity. The issues are frequently confused by the courts. *See generally* 12 James Moore, Moore's Federal Practice § 60.81[1][b] (3d ed.1998.)"); Charles Alan Wright & Arthur R. Miller, 11 Federal Practice and Procedure §§ 2868, 2870 (listing as separate categories under the heading "other methods of relief" and separately discussing the "independent action for relief" and "fraud on the court").

An independent action for relief is an equitable remedy available in civil trials, including habeas proceedings which are conducted under civil rules of procedure. "Relief pursuant to the independent action is available only in cases 'of unusual and exceptional circumstances' " *Barrett v. Secretary of Health & Human Services,* 840 F.2d 1259, 1263 (6th Cir.1987) (citing *Rader v. Cliburn,* 476 F.2d 182, 184 (6th Cir. 1973) (per curiam)). They are "reserved for those cases of injustices, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata," and will only prevail to prevent "a grave miscarriage of justice." *United States v. Beggerly,* 524 U.S. 38, 46–47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). As such actions are not time-limited, to allow them to proceed in cases covered under Fed. R. Civ. Pro. 60(b)(1),(2), and (3), which must be filed within one year of judgment, would eviscerate the time-limits. *Ibid.; accord 2300 Elm Hill Pike,* at *2. Because the independent action for relief sounds in equity, the appellate standard of review is abuse of discretion. *Barrett,* 840 F.2d at 1263.

"The 'indispensable elements' of the independent action are: (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law." *Barrett,* 840 F.2d at 1263 (quoting Wright & Miller, *supra* ). Moreover, "such actions may be maintained only for extrinsic fraud, not for intrinsic fraud. Extrinsic fraud is conduct which prevents a party from presenting his claim in court." *2300 Elm Hill Pike,* at *2. "An allegation of perjury does not raise an issue of extrinsic fraud and thus does not support an independent action for relief from judgment." *Ibid.* "[F]or fraud to lay a foundation for an independent action, it must be such that it was not in issue in the former action nor could it have been put in issue by the reasonable diligence of the opposing party. Perjury by a party does not meet this standard because the opposing party is not prevented from fully presenting his case and raising the issue of perjury in the original action." *Travelers Indem. Co. v. Gore,* 761 F.2d 1549, 1552 (11th Cir.1985) (internal citations omitted).

It is clear that Buell cannot meet this standard. Buell seeks relief from the judgment of the federal habeas court. Therefore the relevant question is whether there was sufficient fraud in the procurement of that denial. However, Buell was not prevented from fully presenting the arguments made here before his original federal habeas petition was denied in 1999. Buell probably knew of Judge Wiest's involvement in the Rucker and Holbrook trials and with reasonable diligence certainly should have been aware of this matter of public record. Buell himself raised the allegations of witness hypnosis in his previous state proceedings, long before his

federal habeas claim was adjudicated. Buell has admitted that he had acquired a copy of the Dawson statement as early as 1992. Having had all of these factual allegations at his disposal during the original federal habeas petition and having either failed to raise them or having raised them and been denied, Buell has no grounds for an independent action today.

*Buell's motion considered as an action for fraud upon the court*

■ AEDPA does not bar a successive petition for habeas corpus based upon fraud upon the court. *See Workman v. Bell,* 245 F.3d 849, 852 (6th Cir.2001) ("In our equally divided opinion denying further relief for the petitioner . . ., all of the judges agreed that the court can reconsider the petition if there was a fraud upon the court"). The Supreme Court has held similarly with respect to a recall of the mandate, the appellate equivalent of a 60(b) order. *Calderon,* 523 U.S. at 556–57 (applying AEDPA in general to recalls of the mandate because a "State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief," but exempting cases of "fraud upon the court, calling into question the very legitimacy of the judgment").

The elements of a fraud upon the court are (1) conduct by an officer of the court (2) directed towards the judicial machinery itself that is (3) intentionally false, wilfully blind to the truth or is in reckless disregard for the truth and (4) a positive averment or concealment, when one is under a duty to disclose, and that (5) deceives the court. *Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir.1993). " 'Fraud upon the court' has been narrowly defined to embrace: only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so the judicial machinery can not perform in the usual manner its impartial task of adjudging cases. It generally involves a deliberately planned and carefully executed scheme designed to subvert the integrity of the judicial process" *True v. Comm'r,* 999 F.2d 540 (6th Cir.1993) (unpublished) (internal citations omitted).[3] However, intentional, fraudulent nondisclosure during discovery can form the basis of a claim of fraud upon the court. *Demjanjuk,* 10 F.3d at 338.

The misconduct alleged here is that of Judge Wiest, who was not an officer of the federal habeas court. The question of what misconduct of a governmental official can be attributed to counsel remains an open and controversial issue in this court. In *Workman v. Bell,* 227 F.3d 331 (6th Cir.2000) (en banc), during a state murder prosecution the medical examiner's office had failed to turn over to the defense an X-ray, alleged to be exculpatory. The defense discovered the X-ray after denial of its first federal habeas petition and sought permission for a successive petition based upon fraud on the court. The lack of the X-ray had been commented upon by the federal habeas courts. The entire court agreed that for a claim of fraud on the court to succeed, the fraud must have been committed by an officer of the federal habeas trial or appellate courts. *Id.* at 336, 341. Some judges found the allegation of nondisclosure by the medical examiner's office and the state's trial prosecutors sufficient to create the need for an evidentiary hearing on whether the state's federal habeas counsel had been privy to this fraud. *Id.* at 336 (Judge Merritt, joined by Chief Judge Martin, and Judges Moore, Daughtrey, Cole, Clay, and Gilman). However, an equal number of

---

**3.** With respect at least to the issue of Judge Wiest's publicly presiding over related legal matters, "fraud on the court" better characterizes the motion than the actions it attacks.

judges supported a more stringent standard and held that, if there were fraud at all, it was fraud by the medical examiner's office on the state court, not fraud by the state's habeas counsel on the federal habeas court. *Id.* at 341 (Judge Siler, joined by Judges Nelson, Ryan, Boggs, Norris, Suhrheinrich, and Batchelder).[4]

However, we need not resolve the issue here, as Buell's claim fails under either standard. Under the more stringent standard, the fact that the alleged miscreant, Judge Wiest, was not an officer of the federal habeas court is sufficient to bar a claim of fraud upon the court based on Judge Wiest's conduct. Under the broader standard, an allegation of fraud against the state trial prosecutors could be sufficient to mandate an evidentiary hearing on whether the state's habeas counsel committed the same fraud on the habeas courts. However, Buell here accuses not the state's trial counsel of misconduct,[5] but rather the state trial judge. A judge is not part of the prosecution team; he does not work in the same office; he is not under the prosecution's chain of command; his involvement with the case is structurally different and highly formalized; he does not even serve within the same branch of government. Therefore, no inference of misconduct on part of the state's federal habeas counsel can be drawn from an allegation of judicial misconduct. Therefore, even under Judge Merritt's broader standard, Buell has failed to sustain any claim of fraud on the district court or this court.

## III

We AFFIRM the district court's denials of the 60(b) motion, the independent action for relief, and the action for fraud upon the court. Permission to file a successive habeas petition is DENIED.

---

**4.** Another circuit considered the same issue and ruled that the more stringent standard is appropriate. *Fierro v. Johnson,* 197 F.3d 147, 155–56 (5th Cir.1999) ("Even if we accepted Fierro's argument that prosecuting attorneys [sic] constructive knowledge of false testimony could satisfy the requirement for a showing of fraud upon the court, we have no basis in law or fact to extend such a theory to the state's habeas attorneys.... Lacking such a

connection as part of a prosecution team, any constructive knowledge of police reports that might be imputed to the prosecutors cannot be imputed to the state's attorneys in a federal habeas case.").

**5.** He made that claim in his original habeas petition and this court denied it. *Buell,* 274 F.3d at 362.