*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PHILIP RAY WORKMAN,

                *Petitioner-Appellant,*

    *v.*

RICKY BELL, Warden,

                *Respondent-Appellee.*

Nos. 06-6451; 07-5031

> Appeal from the United States District Court
> for the Western District of Tennessee at Memphis.
> No. 94-02577—Bernice B. Donald, District Judge.

Decided and Filed: May 4, 2007

Before: SILER, COLE, and SUTTON, Circuit Judges.

_____

## OPINION

_____

    SILER, J., delivered the opinion of the court, in which SUTTON, J., joined. COLE, J. (pp. 6-7), delivered a separate dissenting opinion.

    SILER, Circuit Judge. Philip Ray Workman seeks a stay of execution in connection with his appeal from the denial of a motion under FED. R. CIV. P. 60(b), a motion contending that the Attorney General for the State of Tennessee ("State Attorney General") perpetrated a fraud upon the district court during Workman's habeas corpus proceedings. Because Workman has been given considerable process during the 25 years since a state court jury found that he murdered Lieutenant Ronald Oliver, because Workman cannot seriously contend that his allegations have any bearing on a claim of actual innocence given that he testified at the state court trial that *he* killed Lieutenant Oliver and that *he* shot and injured Officer Aubrey Stoddard during the incident, *see Workman v. Bell*, 178 F.3d 759, 768 (6th Cir. 1998); *State v. Workman*, 667 S.W.2d 44, 46–47 (Tenn. 1984); *State v. Workman*, 111 S.W.3d 10, 12 (Tenn. Ct. Crim. App. 2002), because the claims of fraud on the court are exceedingly attenuated and vague, and because the Tennessee Court of Criminal Appeals has rejected the premises of two of the claims, *see Workman*, 111 S.W.3d at 18–20, Workman has little to no likelihood of success in showing that the district court abused its discretion in rejecting his Rule 60(b) motion. We therefore deny his motion for a stay.

## I.

    Workman was convicted of killing Lieutenant Oliver for which he received a capital sentence in 1982. Since that time, Workman was denied his final appeal on the merits by the Tennessee Supreme Court, *State v. Workman*, 667 S.W.2d 44 (Tenn.), *cert. denied*, *Workman v. Tennessee*, 469 U.S. 873 (1984), and he has concluded traditional federal habeas relief, *Workman v. Bell*, 178 F.3d

759 (6th Cir. 1998), *cert. denied*, 528 U.S. 913 (1999). Post-habeas, Workman's execution has been delayed on five occasions. He has been back through the state courts and has also had a clemency hearing.

Workman's contentions stem from alleged new evidence that he suggests will show Lieutenant Oliver was killed by friendly fire from a fellow officer. He initially points to the testimony of Lieutenant Clyde Keenan during Workman's 2001 clemency hearing. Lieutenant Keenan testified that he, not Terry Willis, found the bullet that killed Lieutenant Oliver at the crime scene. According to Workman, this supports his theory that Lieutenant Oliver was killed by friendly fire.

Workman next points to witness Harold Davis, who testified at the trial as an eyewitness linking Workman to the shooting. During a 2001 state *coram nobis* hearing, Workman alleges that Davis stated that he had not, in fact, seen the shooting as he claimed (but had observed the incident from a different vantage point), and alleges that Davis falsely testified after receiving threats. Workman, finally, points to a crime scene photograph showing a cup that may have contained the police bullet that killed Lieutenant Oliver and testimony from Memphis police officers suggesting that the shooting may have been a friendly fire incident.

## II.

We consider the following factors in deciding whether to grant Workman a stay of execution: 1) whether there is a likelihood he will succeed on the merits of the appeal; 2) whether there is a likelihood he will suffer irreparable harm absent a stay; 3) whether the stay will cause substantial harm to others; and 4) whether the injunction would serve the public interest. *See Capobianco v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004); *see also In re Sapp*, 118 F.3d 460, 464 (6th Cir. 1997), *abrogated on other grounds by Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007). As the Supreme Court recently has indicated, a claimant must show a "significant possibility of success on the merits" in order to obtain a stay. *Hill v. McDonough*, ___ U.S. ___, 126 S. Ct. 2096, 2104 (2006).

The success-on-the-merits inquiry here relates to the district court's rejection of Workman's Rule 60(b) motion, which he filed after our court rejected his habeas corpus petition. Our review of the denial of a Rule 60(b) motion is limited: We may reverse such a decision only when the trial court abuses its discretion. *See Futernick v. Sumpter Twp.*, 207 F.3d 305, 313 (6th Cir. 2000). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (internal quotation marks omitted).

In our view, Workman has not met his burden of showing "a significant possibility" that the district court abused its discretion. Workman argues that the alleged perjurious testimony of Davis and Willis and the other exculpatory evidence amount to a fraud on the court by the State Attorney General during the habeas proceedings.[1] In making this serious allegation against the Attorney General, however, Workman offers nothing serious to show that the Attorney General sponsored this false testimony or knew about it during the federal habeas proceeding. The alleged perjury came to light in state proceedings and not until 2001—five years after the district court's denial of his federal habeas petition and three years after a panel of our court affirmed that decision. Nothing about this time line, save sheer speculation, shows or even suggests that the State Attorney General was aware of the alleged perjury at the time of the federal habeas proceedings. Workman offers no

---

[1]The elements of fraud on the court include conduct: 1) on the part of an officer of the court; 2) that is directed at the judicial machinery itself; 3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; and 5) that deceives the court. *See Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).

evidence showing that the State Attorney General was aware of the missing evidence cup, knew that Davis or Willis made statements at trial that may have been incorrect, or had heard statements by Memphis police officers that Lieutenant Oliver's death was a possible friendly fire incident.[2] Even assuming for the sake of argument that Davis and Willis lied at the state court trial, Workman has failed to show that the conduct in question was "on the part of an officer of the court" as required by *Demjanjuk*. 10 F.3d at 348.

The district court also did not exceed its discretion in declining to impute the conduct of other state and local officials to the State Attorney General. In *Workman v. Bell*, 227 F.3d 331 (6th Cir. 2000) (en banc), our court was equally divided on whether fraud on the court turns on whether the fraud was "perpetrated by an attorney"—namely, by a state attorney during the habeas proceeding. *Id*. at 341. A district court's acceptance of a point of law on one side of an intra-circuit split, like a district court's decision to answer an unresolved question of law within the circuit, does not constitute an abuse of discretion. *See Surles*, 474 F.3d at 297–98.

No less importantly, Workman has not shown how the imputation question would affect the outcome of this case. While Workman focuses most of his fraud-on-the-court allegations on the testimony of Davis and Willis, he has not made a meaningful showing that their testimony was indeed materially false.

The testimony of Davis at the state *coram nobis* proceeding consumes roughly 300 pages of transcript. *State v. Workman*, 111 S.W.3d 10, 15 (Tenn. Ct. Crim. App. 2002). At times, Davis says he did not see Workman shoot the Lieutenant Oliver; at other times, Davis says he does not remember whether he saw Workman shoot Lieutenant Oliver. *Id*. According to the Tennessee Court of Criminal Appeals, the essence of Davis's testimony "can be best summarized" by the following exchange:

> Prosecutor: You're not saying you lied, right?
>
> Davis: Right.
>
> Prosecutor: Ok. In the trial, you're not saying-
>
> Davis: Right.
>
> Prosecutor: -You lied about that?
>
> Davis: Right. I'm not saying that.
>
> Prosecutor: You just don't know.
>
> Davis: I just don't remember. I just don't know . . . .

*Id.*

The Tennessee courts thus considered this evidence and concluded that it did not show that Davis lied at the trial. The state trial court found that the testimony did not amount to a recantation and did not show that Davis had lied during the trial. *Id*. at 16–17. The Tennessee Court of Criminal Appeals, "[b]ased upon [its] review of his testimony," found "it difficult to conclude otherwise." *Id*. at 18. If the Tennessee courts failed to find that Davis had recanted his trial

---

[2]Nor has Workman put forth any facts suggesting that the State Attorney General should have accepted these statements as credible.

testimony or lied at trial, it is difficult to believe that the federal courts could conclude that Davis prevaricated at the same trial.

The state *coram nobis* proceeding also undermines Workman's claim as it relates to Terry Willis. The Tennessee Court of Criminal Appeals expressed skepticism about Workman's claim that "it was the state's theory at trial that this recovered bullet [the one found by Willis] was, in fact, the bullet that killed the victim." *Id.* at 20. The state's opening statement at trial, the state appellate court acknowledged, "arguably might indicate the fatal bullet would be produced at trial." *Id.* But later developments undermined the notion that this was the state's theory of the case. During closing argument, Workman argued that the state did not make good on its promise, as it did not prove that the bullet introduced into evidence was the one that killed Lieutenant Oliver. *Id.* During rebuttal, however, the state did not take issue with this statement, but it instead pointed to an FBI laboratory worker's testimony that "the bullet [introduced as Exhibit 35 and found by Willis] was perfectly consistent . . . with *going through the arm of Officer Stoddard. That's what that slug was*." *Id.* (emphasis added). Recall that the evidence at trial showed (and Workman's own testimony confirmed) that Workman shot Lieutenant Oliver *and* Officer Stoddard. Viewed in this light, Lieutenant Keenan's testimony during the state clemency proceeding that he found the bullet that killed Lieutenant Oliver at the crime scene is perfectly consistent with Willis's trial testimony that he found *a* bullet at the crime scene. *Compare* First Amended Motion for Equitable Relief at 7 ("Willis claimed that he found Exhibit 35 in the parking lot the following morning . . . . He claimed that he thought the bullet . . . was a 'ball bearing.' He claimed that he then took this used 'ball bearing' inside and placed it in his toolbox.") (internal footnotes omitted), *with* Clemency Tr. at 276 ("I'm talking about the round that the police found at the scene. The toolbox round I'm not exactly sure when they found that.") (testimony of Lieutenant Keenan).

In the face of this record, it seems quite doubtful that the trial testimony targeted by Workman was indeed false. And, at any rate, it remains pure conjecture to say that the State Attorney General knew anything about the allegations of falsity (much less the potentially false allegations of falsity) until well after Workman's federal habeas proceeding had concluded. Under these circumstances, we have considerable sympathy for this observation by the district court in explaining its denial of Workman's Rule 60(b) motion:

> The prospect of holding a hearing which would necessarily require the Defendant to prove grave ethical and professional misconduct on the part of the state's habeas attorneys strikes the Court as particularly untoward in the absence of any colorable allegation of such misconduct.

D. Ct. Op. at 18–19.

Workman's reliance on our one-paragraph order granting a stay in *Johnson v. Bell*, No. 05-6925 (Oct. 19, 2006), does not alter this conclusion. That this court has granted a stay in one capital case involving a Rule 60(b) fraud-on-the-court motion of course does not mean that we must grant a stay in every capital case involving such a Rule 60(b) motion. And that is particularly so here since Johnson had not received the same degree of state and federal judicial consideration that Workman has received over the last 25 years.

On this record, Workman has not met his burden of showing a likelihood of success in demonstrating that the district court abused its discretion. Nearly twenty-five years after Workman's capital sentence and five stays of execution later, both the state and the public have an interest in finality which, if not deserving of respect yet, may never receive respect. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998) ("A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief."). Although Workman will

undeniably suffer irreparable harm if executed, the other factors weigh heavily in favor of denying the stay.[3]

        For these reasons, we deny the motion for a stay of execution.

---

[3]To the extent Workman means to suggest that the district court's grant of a certificate of appealability means that we should grant a stay, he is wrong on two fronts.  The two standards, to begin with, are quite different:  The one requires showing a likelihood of success on the merits, while the other requires showing that reasonable jurists could debate the matter. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted).  A district court's certificate of appealability decision, moreover, by no means controls a court of appeals' merits determination.

---

**DISSENT**

---

R. GUY COLE, JR., Circuit Judge, dissenting.  I would grant Workman's stay of execution and therefore I respectfully dissent.

The majority denies Workman's motion for a stay on the grounds that his allegations of fraud are not meritorious.  The majority concludes that Workman has not established that fraud was committed "by an officer of the court" because Workman has not presented sufficient evidence showing that the Tennessee Attorney General knew about the alleged witness perjury, the missing evidence, or the statements by Memphis police describing Oliver's death as the possible result of friendly fire.

Further, the majority takes it upon itself to review the record in the state-court proceedings and based on that record, concludes that Workman has failed to make "a meaningful showing that [Davis's and Willis's testimony] was indeed materially false."  The State does not argue before this Court, nor did it argue before the district court, that Workman's showing as to the falsity of Davis's and Willis's testimony is lacking.  In addition, the district court did not rely on this as a basis for denying Workman's motion for relief from judgment.  Indeed, the district court appears to have come to the opposite conclusion in light of its statement that "Petitioner's fraud claims are replete with allegations, *in part corroborated by the sworn testimony of Davis*—a witness with relevant and personal knowledge—concerning the manufacturing of evidence, solicitation of perjury, and intimidation of witnesses by police officers investigating the shooting of Lt. Oliver."  (Dist. Ct.'s Order On Workman's First Amended Motion For Equitable Relief at 17) (emphasis added).  That the majority chooses to rely on a conclusion not pressed by the State or adopted by the district court strikes me as curious.

In any event, contrary to the majority's reasoning, the ultimate merit of Workman's claims has nothing to do with whether a stay of execution is warranted.  *See Alley v. Bell*, 405 F.3d 371, 373 (6th Cir. 2005) (en banc) (Cole, J. concurring) ("Perhaps Alley's allegations of fraud are true, and perhaps they are not—obviously it will be up to the district court to consider the Rule 60(b) motion and determine if fraud actually occurred.").  Workman's entitlement to a stay instead turns on whether he has shown a likelihood of success in arguing that he is entitled to an evidentiary hearing to prove his fraud claims.  This in turn depends on whether the allegedly fraudulent conduct of State officials during Workman's trial can be imputed to the State's federal habeas counsel.  I believe that Workman has made the necessary showing that he is likely to succeed on this inquiry.

The district court properly recognized that the central question here of whether fraud committed by State officials during Workman's trial can be imputed to the State's habeas counsel "continues to be 'open and controversial' in this Circuit."  (Dist. Ct.'s Order Granting In Part And Denying In Part Petitioner's Application For Certificate Of Appealability at 8) (quoting *Buell v. Anderson*, 48 F. App'x. 491, 499 (6th Cir. 2002)).  Because of this lack of clarity, the district court stated that it was "forced to analyze Petitioner's fraud-upon-the-court claim subject to a persisting ambiguity in circuit precedent governing whether and to what extent the alleged trial court fraud or misconduct of state officials can be imputed to the state's habeas attorneys when fraud upon the federal habeas court is alleged."  (Dist. Ct.'s Order On Workman's First Amended Motion For Equitable Relief at 15-16).

The district court drew on *Buell*, where Chief Judge Boggs characterized our evenly divided en banc opinions in *Workman v. Bell*, 227 F.3d 331 (6th Cir. 2000), as setting forth a "broader" and a "more stringent" standard of what a habeas petitioner must show to be entitled to an evidentiary

hearing on a Rule 60(b) motion alleging that the habeas court's judgment was procured through fraud. Under the "broader" view, allegations of misconduct by the State's trial counsel are sufficient to entitle a habeas petitioner to an evidentiary hearing on whether the State's federal habeas counsel was aware of the fraud. Under the "more stringent" view, allegations of fraud against State officials during state-court proceedings cannot be attributed to the State's federal habeas counsel. Although the district court here adopted the "more stringent" view, it nonetheless acknowledged that "[u]nder the 'broader' standard . . . Petitioner has perhaps stated a claim of fraud upon the court deserving of further inquiry." (Dist. Ct.'s Order On Workman's First Amended Motion For Equitable Relief at 16).

I would therefore grant Workman's motion for a stay due to the prevailing uncertainty about the applicable standard for determining whether his allegations entitle him to an evidentiary hearing. But a further consideration remains.

A panel of this Court, comprised of Chief Judge Boggs and Judges Norris and Clay recently granted a stay of execution in *Johnson v. Bell*, No. 05-6925, under, as the district court put it, "similar circumstances." (Dist. Ct.'s Order Denying Motion For Stay Of Execution at 6, fn. 1). *Johnson* stood in the same procedural posture as this case at the time the stay there was granted. After federal review of Johnson's habeas petition had run its course, Johnson filed a Rule 60(b) motion in the district court on the grounds that the district court's denial of his habeas petition was procured by fraud. The district court denied both Johnson's Rule 60(b) motion and his motion for a stay. Moreover, Johnson's allegations of fraud are similar to Workman's in that Johnson alleged that the State's habeas counsel filed false documents in the district court and allowed a witness to testify falsely at trial. As here, the district court in *Johnson* (the same district court that has presided over Workman's case), noted that the resolution of "whether the 'broader' or 'more stringent' standard [for reviewing claims of fraud by State officials] applies could be determinative of whether Petitioner is entitled to an evidentiary hearing on his fraud-upon-the-court claim." *Johnson v. Bell*, No. 97-3052, Order Denying Motion For Stay Pending Appeal, dated Oct. 17, 2006, at 5. The only conceivable difference between *Johnson* and *Workman* then is that Johnson's execution has been stayed, but unless the en banc Court or the U.S. Supreme Court intervenes, Workman's will not be.

The situation is even more troubling when one considers that the *Johnson* panel could very well resolve the ambiguity surrounding what legal standard applies to Johnson's and Workman's claims of fraud and hold that Johnson is entitled to an evidentiary hearing on that basis. If that occurs, a manifest miscarriage of justice will ensue: Johnson will get his hearing, a hearing that Workman too would get, but for the fact that he will already have been executed. I simply cannot conclude that this inconsistency in the administration of the death penalty is permissible, especially where it can so easily be eliminated.

For these reasons, I believe that Workman is entitled to a stay of execution, and I therefore respectfully dissent.